# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 98

APRIL TERM, A.D. 2014

August 1, 2014

BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING
STATE BAR,

Petitioner,

v.                                                                              D-14-0001

ANDREA RICHARD, WSB No. 5-2848,

Respondent.

## ORDER SUSPENDING ATTORNEY
## FROM PRACTICE OF LAW AND ASSESSING COSTS

[¶1]   This matter comes before the Court upon a Report and Recommendation by Petitioner, the Board of Professional Responsibility of the Wyoming State Bar (the Board) for a three year suspension of Andrea L. Richard's license to practice law. Having reviewed the Report and Recommendation and Ms. Richard's objection to it, considered the oral arguments of counsel and performed an independent and thorough review of the Board record, the Court concludes Ms. Richard violated numerous provisions of the Wyoming Rules of Professional Conduct in many instances and adopts the recommendation of the Board to suspend Ms. Richard from the practice of law for three years.

## FACTS

[¶2]   This is an attorney discipline case that arose out of Ms. Richard's alleged violations of the Wyoming Rules of Professional Conduct in seven different court proceedings between 2006 and 2012.  We present the facts of each of the underlying cases separately.[1]

---

[1] We emphasize that our recitation of the facts is based upon an independent review of the entire record in this matter and is not simply a repetition of the findings of the Board.

### 1. *Fields v. Waterhouse*

[¶3]   Ms. Richard represented the Fields in this action filed in district court in Teton County, Wyoming, involving interior decorating services the defendants provided for the Fields' condominium in Jackson.  The defendants served written discovery requests on the Fields on August 11, 2006.  In October 2006, defendants filed a motion to compel and for sanctions.  By order entered in November 2006 after a hearing, Judge Guthrie required the Fields to provide specific detailed answers to interrogatories and to produce specified documents to defendants within thirty days.  Judge Guthrie also stated:  ". . . the matters relating to discovery and the discovery disputes between the parties are complicated, time consuming, and caused significant undue expenditure of time (and therefore expense) by the parties, their counsel, and this Court."  "In the interest of judicial economy and to reduce the time required by [the] Court and expense to the parties," Judge Guthrie appointed a special master for discovery.  Although she denied the motion for sanctions, Judge Guthrie did so without prejudice, expressly stating that the motion could be renewed if the Fields failed to fully comply with the order.

[¶4]   Seven months later, in June 2007, defendants filed a motion for sanction of dismissal, claiming the Fields had violated Judge Guthrie's November 2006 order requiring them to respond to discovery requests.  After briefing by the parties and a hearing, Judge Cranfill, to whom the case had been re-assigned, issued a decision letter in September 2007, again ordering the Fields to provide specific detailed answers to the same interrogatories and produce the same documents identified in the earlier order.  The September 2007 decision letter also ordered the Fields to produce a document referenced in their complaint and any DVDs relating to the matters alleged in their complaint.  Although recognizing that the Fields had continued to ignore the court's orders, Judge Cranfill denied the motion for sanction of dismissal.  He stated, however:

> The Court is deeply concerned with the discovery matters that have come to light.  It appears that Plaintiffs and Plaintiffs' counsel have formed a pattern regarding discovery that this Court will not tolerate . . . if Plaintiffs' refusal to take part in meaningful discovery continues, Defendants may file another motion.  Any and all sanctions will be considered in the future if such a motion is made by Defendants.

[¶5]  In November 2007, defendants again moved for dismissal claiming the Fields had violated the two earlier orders requiring them to respond to discovery requests.  After a hearing, Judge Cranfill issued a decision letter and order granting the motion and dismissing the case.  In his decision letter, Judge Cranfill stated:  "Plaintiffs have egregiously failed to follow this Court's orders, and this pattern of behavior has continued after the Court warned that this behavior would result in 'any and *all*' sanctions

being imposed upon them." He concluded the severe sanction of dismissal with prejudice was appropriate, stating further, "Plaintiffs' complete disregard of this Court's orders has been blatant and egregious." For her work on the case, Ms. Richard billed her clients over $300,000 in fees and costs.

[¶6] As a consequence of Ms. Richard's failure to comply with the discovery requirements of the Wyoming Rules of Civil Procedure and the district court's orders, bar counsel charged her with violating Rules 3.1, 3.2, 3.4 and 8.4(d) of the Rules of Professional Conduct.[2] After a hearing, the Board concluded bar counsel proved by clear

---

[2] Those rules provide in relevant part as follows:

**Rule 3.1. Meritorious claims and contentions.**

(a) A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.
. . . .
(c) The signature of an attorney constitutes a certificate by him that he has read the pleading, motion, or other court document; that to the best of his knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

**Rule 3.2. Expediting litigation.**

A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

**Rule 3.4. Fairness to opposing party and counsel**.

A lawyer shall not:

(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;
(b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;
(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;
(d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party;

**Rule 8.4. Misconduct**.

It is professional misconduct for a lawyer to:
. . . .

3

and convincing evidence that Ms. Richard violated Rules 3.1, 3.2 and 3.4. The Board concluded bar counsel did not prove by clear and convincing evidence that she violated Rule 8.4(d) and dismissed that charge. The Board further concluded that as a result of Ms. Richard's violations, the parties were exposed to unnecessary expense and delays, and opposing counsel was forced to put in substantial time resulting in higher legal fees in attempting to obtain discovery. The Board also concluded Ms. Richard's clients suffered because their claims were dismissed with prejudice and they incurred substantial attorney fees and costs.

## 2. *Centennial v. AECOM*

[¶7] Ms. Richard represented AECOM in this breach of contract action filed in federal district court in 2009. Centennial sought to collect payments allegedly due from AECOM under the contract. It alleged that AECOM had approved extra costs Centennial incurred in performing under the contract. When a change order was submitted after the extra costs had been incurred, the project owner did not approve them. AECOM asserted it did not have to pay Centennial because Centennial did not obtain a change order in advance. Centennial alleged the parties' prior course of dealing demonstrated the practice was to complete the work first and obtain approval for the excess costs later. Ms. Richard filed an answer on behalf of AECOM asserting the exact opposite—the prior course of dealings showed that AECOM required change order approval before excess costs were incurred. Ms. Richard also claimed Centennial had advised AECOM repeatedly that the cost overrun would be around $50,000.

[¶8] Centennial provided documentation to AECOM showing the parties' prior course of dealing and sought to obtain similar documentation from AECOM. Despite having asserted prior course of dealing in its answer, AECOM refused to produce the documentation on the ground that it was not relevant. AECOM also refused to produce other information Centennial had requested on the ground that it was privileged or prepared in anticipation of litigation. Ms. Richard filed an affidavit supporting the refusal to produce the information, stating that she had reviewed the documentation and it, in fact, fell within the exceptions.

[¶9] In October 2009, Centennial took the deposition of AECOM's program manager. He testified that the $50,000 cost overrun figure asserted in AECOM's pleadings came from him, not from Centennial. Despite this testimony refuting the assertion, Ms. Richard subsequently included the assertion in her pretrial memorandum and submitted a jury instruction containing the assertion.

---

(d) engage in conduct that is prejudicial to the administration of justice;

[¶10] In January 2010, AECOM filed a brief in opposition to a summary judgment motion filed by Centennial. Although the brief cited to an affidavit and exhibits, no affidavit or exhibits were attached. When the affidavit was later filed, unsigned and after the deadline, it did not contain the statements the brief represented it contained. The same day the unsigned affidavit was filed AECOM also filed a motion for extension of time to file the exhibits missing from the brief. In response, Centennial filed a reply brief in which it identified sixteen misrepresentations of fact made in AECOM's brief.

[¶11] On March 1, 2010, Centennial sought an order compelling production or an *in camera* review of the documentation withheld as privileged or prepared in anticipation of litigation and, on March 29, 2010, Magistrate Beaman ordered AECOM to submit the documentation for his review. On April 12, 2010, the magistrate entered an order finding that none of the documents at issue were prepared in anticipation of litigation and directing AECOM to produce them. With regard to the documents AECOM contended were privileged, the magistrate concluded most of them were in fact privileged but identified a number of them that were not and ordered AECOM to produce those identified as not privileged. The magistrate ordered AECOM to produce the documents by April 16, 2010.

[¶12] Meanwhile, on March 26, 2010, Centennial had filed a motion for sanctions to compel AECOM to produce course of dealing discovery. After a hearing, the magistrate entered an order on the motion. Addressing the parties' discovery history, the magistrate found in relevant part:

> The parties submitted their initial disclosures on July 31, 2009.
>
> Centennial's initial disclosure named a number of potential witnesses, identified the discoverable information each witness possessed and contained an extensive list of documents, compilations, tangible evidence and its computation of damages.
>
> AECOM submitted a "barebones" initial disclosure, "which simply provided the names of three individuals and 'identified' general documents it stated it might rely on, such as 'correspondence' and 'invoices'."
>
> On October 21, 2009, Centennial submitted its responses to AECOM's first discovery request, in which, with the exception of two objections, it fully answered each interrogatory and request for production and identified nine

5

projects where AECOM had paid extra costs without advance change orders.

On October 26, 2009, AECOM submitted its responses to Centennial's first discovery request, in which it objected to "every single interrogatory, request for production and request for admission", provided "vague and inexact" responses, pointed to approximately 2000 possible documents where answers might be found and objected to the request for evidence concerning the parties' prior course of dealing.

On November 21, 2009, AECOM submitted its response to Centennial's second discovery request, again failing "to provide any solid answer" to the request concerning prior course of dealing, objecting "in each and every response to written discovery on the specious grounds of relevance", and, in responding to interrogatories concerning prior course of dealing, directing Centennial to the deposition of an AECOM employee who testified he had no firsthand knowledge of the parties' history concerning change orders.

On March 23, 2010, the Court entered an order denying summary judgment in which it stated that evidence of the parties' prior course of dealing would be permitted at trial. AECOM thereafter submitted its second disclosure statement which suffered "from the same defects" as the prior disclosure statements.

After Centennial filed its motion for sanctions to compel discovery, AECOM submitted a third initial disclosure statement which "still does not provide any information regarding course of dealing" and, once again, contains "evasive," "vague and imprecise" responses.

[¶13] The magistrate concluded Centennial had made multiple good faith attempts to get AECOM to adequately respond to its discovery requests and AECOM had "hindered those attempts at every turn," "made the routine discovery process in this case anything but routine" and continued to refuse to provide "any substantive discovery of course of dealing" even though the issue had existed since July 2009. The magistrate further stated:

> The Court finds prejudice is palpable in this matter. The record lays [bare] a pattern of dilatory behavior on the

6

part of [AECOM]. The discovery issue at bar was originally generated in July 2009. [AECOM]'s scant . . . initial disclosure set the stage for the course of discovery in this case and, from that time forward, [AECOM] has consistently avoided producing any documentation based on its unilateral and conclusory assertions of lack of relevancy. . . . [AECOM] has thwarted the discovery process at every turn and has done so for months and months. . . .

. . . .

[AECOM]'s actions further create financial burdens on [Centennial] since [Centennial]'s counsel is forced to repeatedly follow up . . . to request information that should have been provided as a part of the ordinary course of discovery. Moreover, the tortured discovery history in this case has made it close to impossible for [Centennial] to effectively prepare its trial strategy. [AECOM] has failed to provide any substantive discovery, therefore, [Centennial] is left to speculate as to defenses that may be presented at trial.

[¶14] Despite these findings, the magistrate denied Centennial's motion for sanctions and gave AECOM another chance to provide proper disclosures. The magistrate ordered AECOM to fully respond by May 11, 2010. Ms. Richard appealed to U.S. District Court Judge William F. Downes, who affirmed the magistrate's order.

[¶15] Meanwhile, after receiving AECOM's responses to some discovery requests on April 16, 2010, Centennial filed a motion for leave to amend its complaint to add four new causes of action it had been unaware of prior to receiving the responses. Finding that the amendment just before trial was attributable to AECOM's late disclosures, the magistrate granted the motion. AECOM again appealed to Judge Downes, who affirmed the order.

[¶16] On June 4, 2010, Centennial filed a motion to compel AECOM to cooperate in depositions and answer written discovery and a motion for sanctions in which it alleged that AECOM was continuing not to cooperate with discovery in violation of the Court's orders. Judge Downes entered an order granting the motion to compel but did not award sanctions at that time.

[¶17] AECOM filed a motion to continue the trial which was scheduled to commence on June 22, 2010. Judge Downes denied the motion, stating that the record reflected a "complete lack of diligence and cooperation" by AECOM; AECOM had "misdirected significant time and precious resources" of its own, the Court and Centennial in the last weeks before trial with "wasteful and unsupported motions and appeals"; and AECOM

7

should not be allowed to benefit from further delay "caused by its own dilatory behavior."

[¶18] On June 17, 2010, less than a week before trial, Judge Downes entered an order on Centennial's motion for sanctions. The order states in relevant part:

> From a review of the pleadings and record in this matter, it appears that [Centennial] may have good grounds justifying an award of substantial sanctions. [AECOM]'s pattern of conduct is an egregious violation of the rules governing discovery obligations. There must be a biting sanction to such dilatory and obstructive conduct. . . . [AECOM] is forewarned that a monetary sanction is likely to be imposed.

[¶19] The case proceeded to trial, resulting in a jury verdict for Centennial. On August 6, 2010, Centennial filed an additional motion for sanctions against AECOM. The Court entered an order granting the motion, finding:

> Ms. Richard's April 16, 2010 certification that AECOM has produced the documents specified in the magistrate's April 12, 2010 order was not accurate in that one particular document was not produced; although Centennial notified Ms. Richard that the document had been omitted, Ms. Richard let more than a month go by before she produced it even though "it would have taken [AECOM] but a few minutes to verify that the item had not been produced and to cure this violation of the Court's Order."

> Ms. Richard failed to comply with the April 27 order in that the responses to Centennial's second discovery request contained evasive and bad faith denials of four requests to admit, failed to identify any course of dealing evidence, willfully disregarded the magistrate's order to identify specific documents responsive to the document request and withheld responsive documents for months.

> Ms. Richard failed to show the failure to produce responsive documents was inadvertent; rather, the record showed "a complete disregard of her obligation to act with care and in good faith."

8

Ms. Richard's belated production in June 2010 of handwritten notes of AECOM's lead witness precluded a fair opportunity for Centennial to investigate or discover the true facts, prejudicing three of its claims on which it did not succeed at trial.

Ms. Richard's belated and evasive responses to discovery requests relating to Centennial's interference with contract claims caused unfairness to the latter's ability to present that claim; "[h]aving failed to cooperate fairly in responding to . . . discovery, [AECOM] then infused corporate representatives/trial witness with partial knowledge of partial facts, seeking and obtaining tactical advantage in the limited time to prepare brought by its own dilatory behavior."

[¶20]  The Court concluded:

[AECOM]'s pattern of obstructive behavior has been pervasive and persistent throughout the entire course of written discovery and detrimental to the function of the judicial process.  [AECOM] has evinced a cavalier disregard for the rights of the Plaintiff, the Rules of Civil Procedure governing discovery, and the Orders of this Court seeking to enforce those rules, and similar behavior continued even after the April 12 Order and the April 27 Order spelled out vividly the previous departures by [AECOM] from acceptable standards of conduct and provided further opportunities for [AECOM] to cure the inadequacies and alter the behavior.

Taking into account the willfulness of the discovery misconduct and the prejudice to Centennial, the Court ordered AECOM to pay attorney fees in the amount of $58,361.51. Ms. Richard appealed the order imposing sanctions to the Tenth Circuit Court of Appeals, which affirmed the order.

[¶21]  As a consequence of what occurred in *AECOM*, counsel for Centennial filed a grievance against Ms. Richard with the Board.  After conducting an investigation, bar counsel filed a charge against Ms. Richard for violating Rules 3.1, 3.2, 3.3, 3.4, 5.1, 5.3, 8.4(c) and 8.4(d).[3]  After the hearing, the Board concluded bar counsel proved by clear

---

[3] **Rule 3.3. Candor toward the tribunal**.

(a) A lawyer shall not knowingly:

9

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

(2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

(b) A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

(c) The duties stated in paragraphs (a) and (b) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

(d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.

## Rule 5.1. Responsibilities of partners, managers, and supervisory lawyers.

(a) A partner in a law firm, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct.

(b) A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct.

(c) A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:

(1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

## Rule 5.3. Responsibilities regarding nonlawyer assistants.

With respect to a nonlawyer employed or retained by or associated with a lawyer:

(a) a partner and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

and convincing evidence that Ms. Richard violated Rules 3.1, 3.2, 3.3, 3.4, 8.4(c) and 8.4(d). The Board concluded bar counsel did not prove by clear and convincing evidence that Ms. Richard violated Rules 5.1 and 5.3 and dismissed those charges. The Board concluded Ms. Richard's conduct resulted in unnecessary expense and delay and AECOM incurred over $250,000 in fees and expenses.

### 3. *Big-D v. Starrett*

[¶22] Ms. Richard represented Starrett Properties, LLC and Morris Starrett (Starrett) in this breach of contract case filed in 2008 in the district court in Teton County, Wyoming. Big-D sought to recover costs it had incurred in constructing a home on Lot 81. Ms. Richard filed a counterclaim on behalf of her clients claiming Big-D breached the contract for the home on Lot 81 as well as two other contracts on different lots.

[¶23] In February 2011, the district court entered an order of partial summary adjudication in which it ruled that Starrett was barred from bringing claims relating to the two lots covered by different contracts. During the deposition of Starrett's expert witness, which was taken after the February 2011 ruling, the following exchange occurred during counsel for Big-D's questioning:

> Q. Do you know how much Big-D is claiming in escalation costs?
>
> A. If you combine lot 81 and lot 85, around a quarter million.

---

(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and

(c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:

(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

**Rule 8.4. Misconduct**.

. . . .
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

Q.     Are you aware that the judge has ruled that there are no claims on lot 85 allowed in this lawsuit?

Ms. Richards:  And I'm going to object because it calls for a legal conclusion.

I think the judge has ruled there are promissory estoppel claims in this case.   The judge has ruled that the consequential damage clause bars claims on 81 and 85, but I don't think he's excluded all promises on 81 and 85, so we'll just agree to disagree. . . .

. . . .

Q.     [By Big-D's counsel]  Have you read the Motion for Partial Summary Judgment and the order that the judge issued on that motion?

A.     No.

Q.     So you're not aware that he – one of his orders was, and I think this is verbatim, "claims related to lot 75 and 85 are barred"?

Ms. Richards:  And, [counsel], I'll just say again that, you know, my hope was you can explore all of his opinions and knowledge, then the legal issues will be left for you and I to work out.

[¶24]  The following exchange occurred during Ms. Richard's questioning of the witness:

Q.     When you looked at documents – now, I guess I understood you to say that you looked at project documents for all three projects; 81 –

A.     Actually, not 75 --

Q.     -- 75 and 85.

A.     -- to much extent; yeah.

Q.     Okay, so you spent most of your time on 81 and 85?

12

A.     That's correct.

[Big-D's counsel]:   And I'm going to object because 85 is irrelevant –

Ms. Richard: And you can state your objection.

[Bid D's counsel]:   Yeah, and I'm going to move for a mistrial if evidence – and sanctions if evidence regarding 85 is introduced.

Ms. Richard: And you can make your motion, but I think you have to wait until he rules on Monday.

. . . .

Q.     [By Ms. Richard]:   So, were there any patterns that you were able to correlate or notice between 81 and 85 in terms of how the projects were managed by Big-D?

[Big-D's counsel]:   I'm going to make a standing objection on the record to any questions and any testimony and evidence provided regarding lot 85.  It's irrelevant.  It's been excluded by the judge.

[¶25]  Two days later, Ms. Richard went to opposing counsel's office.  She related what had occurred at the deposition to Big D's co-counsel, who had not been present.  She informed him that she was not going to accept being threatened with sanctions and said she wanted to see if he was involved in his co-counsel's threat.  When asked why she was in his office, Ms. Richard said she wanted to make it clear what the limit was so that he would understand the boundaries.  Ms. Richard tape recorded the confrontation without counsel's knowledge.  Counsel sent a letter to bar counsel describing what had occurred and stating that Ms. Richard verbally threatened him.

[¶26]   Meanwhile, in late February of 2011, the parties submitted their pretrial memoranda.  Ms. Richard's memorandum listed exhibits A through Z, AA through NN, BB through LL and OO through VV.  On March 7, 2011, one week before trial and three days after the pre-trial conference, Ms. Richard submitted an amended pretrial memorandum re-listing exhibits A through Z, re-lettering exhibits AA through NN as R1 through R14 and adding different exhibits as AA through ZZ.  On March 11, 2011, at 4:56 p.m. the Friday before trial was to begin the following Monday, Ms. Richard filed a revised exhibit list adding exhibits AAA through HHH.  Ms. Richard sent the revised

exhibit list to opposing counsel the following day, Saturday, March 12, two days before trial.

[¶27] On the first day of trial, opposing counsel informed Judge Sanderson that Ms. Richard's latest revised exhibit list included exhibits she had never seen. Ms. Richard told the judge the only new exhibits were deposition transcripts. In fact, in addition to deposition transcripts, the late filed revised list included the following categories of exhibits that had not been previously listed:

> DDD  Big D Emails
> EEE  Sterrett Defendants Emails
> FFF  Lot 85 Pay Applications and Change Orders
> GGG  Lot 81 Change Orders
> HHH  Big D Project Files, Lots 75, 81 and 85.

[¶28] On March 15, 2011, Judge Sanderson continued the trial indefinitely so that a number of matters raised by Ms. Richard could be briefed, considered and ruled upon. After further consideration, the judge declared a mistrial and released the jury. The trial was re-scheduled for October 2011. Subsequently, pretrial motions were filed and the judge entered orders precluding Ms. Richard from amending her counterclaim to add a promissory estoppel claim in regard to Lot 85; introducing any claims or evidence relating to Lot 75 or 85 (this was the second time the Court made this ruling); bringing claims for quality or defective work relating to Lot 81; and, in light of the waiver provision in the contract, claiming consequential or delay damages.

[¶29] Big-D then filed a motion for partial summary judgment in regard to the amount due under the prime contract and two change orders. The court granted the motion, finding there was a valid, unambiguous contract for Lot 81; the contract was properly modified by the two change orders; the total contract price after the change orders was $1,509,811.00; Sterrett paid $1,194,425.04 of the amount owed and, therefore, breached the contract by failing to pay the remaining $315,386.42; Sterrett also owed interest in the amount of $126,225.99; the only issues remaining for trial were Big-D's breach of contract and unjust enrichment claims related to two additional change orders and Sterretts' counterclaim for breach of contract related to delay. Concerned that the remaining claims were not viable, Judge Sanderson asked the parties to present briefs defending the remaining claims. After considering the briefs, he dismissed the remaining claims with prejudice.

[¶30] In his decision letter issued prior to the order of the dismissal, Judge Sanderson stated:

> The Court has made a continual and repeated effort in pretrial conferences (note the plural) and summary judgment motions

to get the Defendant to simplify the issues by stating exactly what is being claimed and on what legal theory it relies. The Court needed to get the case simplified so it could make proper evidentiary rulings and proper jury instructions so the jury could decide the case. The Court believes it is an attorney's duty as an officer of the court to assist in this while still representing her/his client's interests. . . .

The Court has ruled on motions for partial summary adjudication . . . only to see the same claims dressed differently raised again. At last instance the Court even raised the point that the contract appeared to cover all of the disputes and constituted the entire agreement of the parties and gave the parties the time they requested to point out where the Court was wrong. The only thing that came up at this hearing where there may be a dispute that fell within a breach of contract was that a stainless steel range hood was used rather than a more expensive copper one and that there were going to be fancier garage doors. This being the only apparent dispute, Ms. Richard did not state what the amount of the damage was at the hearing. Counsel has the duty of making sure that the counterclaim meets the subject matter jurisdiction of this Court.

The other matters, i.e. the interest calculation and other credits were either not raised at all or not with sufficient particularity for the Court to conclude there was a genuine dispute.

The Court agrees that the pleadings filed after November 10, 2011 are simply an effort to revive or reconsider what has already been ruled upon. The Motion to Strike [filed by Big-D] is granted.

As to [Big-D's] motion for sanctions, the Court believes the granting of [the] motion to strike pleadings adequately resolves the matter[.]

In summary, the court acknowledges that the Defendant may have lost a legitimate basis for an offset somewhere, but it was the Defendant's responsibility to state it clearly and cogently within the times previously set. The

> Court can only rule on what is presented, not on what is brought up afterward.

[¶31] Both parties appealed the order of dismissal. One of the issues presented on appeal was whether Mr. Sterrett was individually liable for the amount awarded in the partial summary judgment. *Big-D Signature Corp. v. Sterrett Properties*, 2012 WY 138, ¶¶ 27-28, 288 P.3d 72, 79 (Wyo. 2012). Based upon Ms. Richard's concession during oral argument, this Court concluded the contract bound him individually. During her argument, Ms. Richard told the Court a particular affidavit was included in the appellate record; in fact, the affidavit was not in the record. This Court found in favor of Big-D on all other substantive issues presented, including Sterrett's counterclaim and whether Big-D was entitled to relief under the two additional change orders on the basis of an oral contract. The latter issue was remanded to the district court.

[¶32] Back in district court, Big-D moved for dismissal of the case, stating that it had analyzed the costs and benefits of pursuing the claims arising from the two additional change orders and was electing not to pursue them. *Sterrett v. Big-D*, 2013 WY 154, ¶ 6, 314 P.3d 1155, 1156-57 (Wyo. 2013). Ms. Richard filed an objection to the motion asserting that final judgment was not appropriate until her counterclaim had been adjudicated. The district court granted the motion to dismiss, finding that the counterclaim had been dismissed in the original action and that dismissal had been affirmed by this Court on appeal. After the district court entered the order of dismissal, Ms. Richard filed a motion for costs and attorney fees, even though judgment had been entered against her client for $441,612.41 in the original action. The district court denied the motion and, on Big-D's motion, awarded sanctions against Ms. Richard.

[¶33] Meanwhile, Ms. Richard appealed the orders dismissing Big-D's claims on the two additional change orders and denying her claim for attorney fees. This Court held that no counterclaims remained for trial after we affirmed the district court's order dismissing them in the first appeal and any other claims were moot upon the district court's subsequent order dismissing them on Big-D's motion. We further held that the district court properly denied Ms. Richard's motion for attorney fees, stating "it would be absurd to classify [her clients] as the 'prevailing party'" given that a judgment of over $400,000.00 was entered against them in the litigation.

[¶34] As a consequence of Ms. Richard's actions, counsel for Big-D filed a grievance against Ms. Richard with the Board. After investigating, bar counsel filed charges against Ms. Richard claiming she violated Rules 3.2, 3.3, 3.4, 5.1, 5.3, 8.4(c) and 8.4(d). The Board concluded bar counsel proved by clear and convincing evidence that Ms. Richard violated Rules 3.2, 3.3, 3.4, 8.4(c) and 8.4(d). The Board concluded bar counsel did not prove by clear and convincing evidence that Ms. Richard violated Rules 5.1 and 5.3 and dismissed those charges. The Board concluded Ms. Richard's conduct exposed

16

the parties to unnecessary expense and delay and her clients incurred over $125,000 in fees and expenses.

### 4. *Haden v. Bontecou Construction*

[¶35]   Ms. Richard represented Bontecou Construction in this dispute between a homeowner and a builder over the cost of construction of a house in Teton County, Wyoming.  A series of emails contained in the record reflects that counsel for Haden requested that a computer be produced at a deposition scheduled on November 4, 2009. The computer was not produced and it was not until December 10, 2009, that Ms. Richard produced documents obtained from an inspection of the computer.  Ms. Richard did not produce the privilege log showing what documents she withheld until December 22, 2009.

[¶36]   On February 9, 2010, counsel for Haden filed a request for inspection of other computers containing Bontecou's files on the construction.  Ms. Richard objected, asserting the request was overly broad and burdensome.  Judge Guthrie granted the request on March 24, 2010, noting that the scope of the request was identical to an earlier request made by Ms. Richard for computer inspection and was not, therefore, overly broad or burdensome.  When the inspection still did not occur, Haden filed a motion for forensic inspection of Bontecou's computers on May 6, 2010.

[¶37]   On May 13, 2010, counsel for Haden also filed a motion to compel production of the privilege log for Mr. Bontecou's electronic files and for sanctions for discovery abuses. Ms. Richard filed an opposition to the motion and counsel for Haden submitted a reply brief to which he attached the April 12, 2010, and April 27, 2010, discovery orders issued by the federal magistrate in *Centennial v. AECOM.*  Counsel sought to show a pattern of discovery abuse by Ms. Richard.  Two weeks later, Ms. Richard arrived at the offices of Haden's counsel and demanded to speak with opposing counsel.  When she was told he was on the phone, Ms. Richard proceeded to his office, ordered him to get off the phone, demanded to know where he got the AECOM orders and told him "you have no idea who you're messing with" and "I will bring the full weight of this upon you." Ms. Richard followed up the confrontation with a letter threatening to seek W.R.C.P. 11 sanctions if counsel did not withdraw his reply brief.

[¶38]   In early June 2010, counsel for Haden contacted Ms. Richard about setting up a time for his forensic computer inspector to have access to the Bontecou computers.  After several emails back and forth, Ms. Richard stated the inspection could be scheduled "for any day the following week."  Counsel for Haden replied that his inspector could be there June 16, at 9:00 a.m. and reiterated an earlier request for specific information about the computers so the inspection could be performed.  On June 14 and 15, counsel for Haden followed up with emails informing Ms. Richard that the inspector would arrive for the inspection by 10:30 at the latest and needed the information requested earlier.  On June

16, 2010, the inspector arrived at Bontecou's offices and was not allowed inside. Counsel for Haden emailed Ms. Richard at 10:40 that morning, asked when he would be allowed in and reiterated that time for the inspection was limited because his inspector was scheduled to fly out at 5:40 that evening. Counsel sent a second email at 11:30 a.m. stating that if the inspector was not allowed in by noon, he might not be able to complete the inspection. Ms. Richard replied that she would be at Bontecou's offices at noon and the inspection could take place then. Upon being allowed in, Haden's inspector was presented with a modified copy of the inspection protocol the court had approved. The original protocol allowed inspection of an external hard drive containing time capsule information; the modification did not allow inspection of the hard drive. Ms. Richard told the inspector that opposing counsel had agreed to modify the protocol. Opposing counsel knew nothing about the modification until the inspector informed him.

[¶39] In order to complete the inspection, Haden's forensic computer inspector rescheduled his departure time to the following afternoon. Counsel informed Ms. Richard and stated that if access was not provided to the external hard drive, he would ask for an emergency hearing. The following day, Ms. Richard wrote a letter to opposing counsel stating that he had unilaterally scheduled the inspection, the inspection took longer than expected due to the inspector's software and Mr. Haden would have to bear that expense as well as the expense associated with disrupting Bountecou's business during the inspection. She requested payment in the amount of $1,375.00 by June 25, 2010.

[¶40] Haden's counsel filed a grievance against Ms. Richard. After investigating the claims, bar counsel charged Ms. Richard with violations of Rules 3.1, 3.2, 3.4, 8.4(c) and 8.4(d). The Board concluded bar counsel proved by clear and convincing evidence that Ms. Richard violated Rules 3.2, 3.4 and 8.4(c) but did not meet his burden of proving violations of Rules 3.1 and 8.4(d).

### 5. *Shindell v. Shindell*

[¶41] This was a divorce action filed in district court in Teton County. The divorce decree entered in 2004 awarded primary custody of the parties' two minor children to the mother and liberal visitation to the father. Seven years later, in 2011, Ms. Richard filed a petition on behalf of the mother to modify visitation by either suspending father's visitation until the Department of Family Services (DFS) could investigate or requiring visitation to occur in Jackson, Wyoming. The petition alleged: "A licensed professional counselor has concerns that [father] is abusive to the children both emotionally and, at times, physically" and "does not appear to have the ability to provide adequate care for each child" during visitation. The petition further alleged that counsel "is of the opinion that [father]'s interaction and communication with the children has deteriorated and is increasingly abusive and destructive."

[¶42]  In support of the petition, Ms. Richard presented an affidavit from the licensed professional counselor which stated:

> 1. I am a licensed Professional Counselor in the State of Wyoming.
>
> 2. I have interviewed the Shindell children.
>
> 3. It is my opinion that [father]'s behavior towards his children creates concerns that [he] is abusive to the children both emotionally and physically.
>
> 4. In my opinion, it does not appear that [father] has the ability to provide adequate care for each child throughout each period of responsibility and visitation.
>
> 5. I believe that [father]'s interaction and communication with the children has deteriorated and is increasingly abusive and destructive.

[¶43]  At a hearing on the petition, the counselor testified that he had not treated the Shindell children since 2002 or 2003; his only meeting with them since 2003 was for about a half-hour when he met with them to explain the legal process for the hearing; he had never diagnosed, tested or had anyone else test the children; he was not qualified to perform a formal psychological assessment and had not done so with the children; and virtually everything he had to say at the hearing was based on what the mother told him. Upon questioning by Judge Tyler, the following exchange occurred:

> Court:        . . . Are you a counselor for these girls or not?
>
> Witness:   No, not at present.
>
> Court:   And in what capacity are you coming forward with opinions if you're not their counselor?
>
> Witness:      As their former counselor and as a trusted advisor to their mother.
>
> Court:      Is the manner in which you conducted this interview with the girls on that one occasion for however long it was on whatever date it was your normal way of conducting your professional services?

Witness:    No.

Judge Tyler ruled the testimony was inadmissible.

[¶44]  Counsel for the father filed a grievance against Ms. Richard.  After investigating, bar counsel filed charges against Ms. Richard for violations of Rules 3.1, 3.3, 3.4, 8.4(c) and 8.4(d).  After the hearing, the Board concluded bar counsel met his burden of proving all of the violations except the alleged violation of Rule 3.4, which it dismissed.

### 6. *Miller v. Henderson*

[¶45]  Ms. Richard represented the plaintiff in this proceeding filed in district court in Teton County.  On August 23, 2012, Ms. Richard served notice of the video deposition testimony of a witness to take place the following day.  During opposing counsel's cross-examination of the witness, Ms. Richard interrupted and asked to be allowed to proceed with re-direct examination, saying that she had to leave.  Opposing counsel objected and Ms. Richard proceeded to question the witness.  When Ms. Richard continued her questioning over counsel's repeated objection, counsel called the judge and a telephone hearing was conducted.  Judge James ruled that opposing counsel would be allowed to complete his cross-examination before Ms. Richard conducted re-direct examination and declined to impose a time limit on cross-examination.  After Judge James' ruling, Ms. Richard continued to ask her to impose a time limit on cross-examination.  When the telephone hearing concluded, Ms. Richard persisted in her demand that she be allowed to question the witness and that opposing counsel limit his cross-examination to a specified time.

[¶46]  As a result of her conduct during the video tape deposition, bar counsel charged Ms. Richard with violating Rule 3.1, 3.3, 3.4, 3.5, 8.4(c) and 8.4(d).[4]  After deliberating, the Board concluded there was clear and convincing evidence of violations of Rules 3.4, 3.5 and 8.4(d), but dismissed the charges under Rules 3.1, 3.3 and 8.4(c).

### 7. *Dorf v. City of Evansville*

[¶47]  Ms. Richard represented the plaintiff in this action filed in federal district court against the City and two individuals under 42 U.S.C. § 1983.  Judge Skavdahl granted the individual defendants' motion for judgment on the pleadings on April 22, 2012, finding

---

[4] **Rule 3.5. Impartiality and decorum of the tribunal**.

A lawyer shall not:

(a) seek to influence a judge, juror, prospective juror or other official by means prohibited by law;

20

that the complaint failed to allege sufficient facts to state a plausible claim for relief. On September 7, 2012, the court likewise dismissed the complaint against the City. In the later order, Judge Skavdahl described the following events:

> The day before the deadline for responding to the City's motion for judgment on the pleadings, Ms. Richard filed a motion for extension of time. She did not indicate she would be asking the court to reconsider its ruling [as to the individual defendants] or that she would be seeking leave to amend the complaint. At 11:52 p.m. on the day her response was due, Ms. Richard filed a motion for reconsideration, opposition to the City's motion and motion to amend the amended complaint. The following day, she filed a revised motion for reconsideration and opposition to the City's motion. An hour later, she filed a motion seeking additional time to file the revised motion and opposition, stating that the revision was necessary to correct typographical errors and add additional authority and subsequent history of cited cases and an extension should be granted in the interests of justice.
>
> After the clerk's office advised Ms. Richard that filing two separate documents in a single submission violated the court's electronic case filing procedures and she needed to file her motion for reconsideration and response to the City's motion as separate documents, Ms. Richard re-filed the same exact document twice, stating that the authority and argument supporting both pleadings was the same. Ms. Richard did not separate the facts, supporting authority and argument relating to her motion to reconsider from those relating to her response to the City's motion.

[¶48] Judge Skavdahl expressed uncertainty about which version of Ms. Richard's brief he should properly consider—the one filed at 11:52 p.m. on the date to which the original deadline had been extended or the revised motion filed the following evening. Considering the reasons Ms. Richard gave for the revised motion, the judge concluded she had filed a rough draft of the motion and response on the due date and sought to file a corrected version the following evening. Citing a previous order he had entered striking a supplemental post-deadline memorandum Ms. Richard had filed under substantially similar circumstances and for which she failed to establish either good cause or excusable neglect, Judge Skavdahl stated "[t]his practice illustrates a troubling and unmistakable pattern in counsel's approach to briefing."

21

[¶49] Judge Skavdahl acknowledged that striking the revised brief was warranted, but declined to do so. He recognized Ms. Richard's "ongoing failure to adhere to the deadlines of the Court" and the difficulties presented to the defendants faced with reading, comparing and responding to multiple versions of the same brief; he concluded, however, that Ms. Richard's failings should not work a hardship on her client. Judge Skavdahl considered the late filed revised motion and response and granted judgment on the pleadings for the defendants.

[¶50] Bar counsel charged Ms. Richard with violating Rules 1.1, 3.1, 3.4(c) and 8.4(d).[5] After hearing the evidence and deliberating, the Board concluded bar counsel had proved by clear and convincing evidence violations of Rules 3.1, 3.4(c) and 8.4(d) but not a violation of Rule 1.1 and dismissed the latter charge.

## ATTORNEY DISCIPLINARY PROCEDURE

[¶51] The purposes of the state bar disciplinary procedure are to maintain "the integrity of the bar," "to prevent the transgressions of an individual lawyer from bringing its image into disrepute" and to "protect the public and the administration of justice." *Bd. of Prof'l Responsibility v. Casper*, 2014 WY 22, ¶ 7, 318 P.3d 790, 793 (Wyo. 2014); *Bd. of Prof'l Responsibility v. Davidson*, 2009 WY 48, ¶ 17, 205 P.3d 1008, 1015 (Wyo. 2009); *In re Clark*, 613 P.2d 1218, 1221 (Wyo. 1980). Wyo. Stat. Ann. § 5-2-114 (LexisNexis 2013) charges this Court with adopting rules of "practice and procedure in all courts of this state, for the purpose of promoting the speedy and efficient determination of litigation upon its merits." Wyo. Stat. Ann. § 5-2-118 (a)(iii) (LexisNexis 2013) further charges this Court with adopting rules establishing "practice and procedure for disciplining, suspending, and disbarring attorneys."

[¶52] Pursuant to Wyo. Stat. Ann. § 33-5-104 (LexisNexis 2013), membership to the bar is by petition to the Wyoming Supreme Court. Pursuant to §1(a) of the Disciplinary Code for the Wyoming State Bar, attorneys are "subject to the exclusive disciplinary jurisdiction of this Court and the Board . . . ." Disciplinary proceedings are "necessarily incident to the inherent power of courts to control properly their own affairs." *State Bd. of Law Examiners v. Brown*, 53 Wyo. 42, 49, 77 P.2d 626, 628 (Wyo. 1938). The Board acts as an arm of this Court in taking evidence and making findings and recommendations to this Court. *Mendicino v. Whitchurch*, 565 P.2d 460, 475 (Wyo. 1977). Although we give due consideration to the Board's findings and

---

[5] **Rule 1.1. Competence**.

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

recommendations, the "ultimate judgment in these cases is vested in the Court." *Casper*, ¶ 8, 318 P.3d at 793-94, citing *Mendicino*, 565 P.2d at 466. *See also Davidson*, ¶ 1, 205 P.3d at 1012.

[¶53] In determining whether discipline is appropriate in these special proceedings, this Court must be satisfied that "substantial, clear, convincing, and satisfactory evidence" exists to sustain the findings of the Board. *Mendicino*, 565 P.2d at 475. Clear and convincing evidence is "that kind of proof that would persuade a trier of fact that the truth of the contention is highly probable." *SMH v. State*, 2012 WY 165, ¶ 19, 290 P.3d 1104, 1109 (Wyo. 2012); *Meyer v. Norman*, 780 P.2d 283, 291 (Wyo. 1989). The clear and convincing standard must be applied consistently to each and every charge against the attorney. *Id*.

## DISCUSSION

[¶54] Ms. Richard conceded generally at the hearing before the Board that she failed to adhere to the rules of the tribunal in *Fields*, *AECOM*, *Sterrett*, *Miller* and *Dorf*. Through counsel, she admitted during oral argument before this Court that her conduct probably violated in many instances the Code of Professional Conduct. Counsel specifically conceded that Ms. Richard's attempts to comply with the magistrate's discovery orders in AECOM fell short and were improper. Despite these general concessions and admissions, we find it appropriate to address the specific rules Ms. Richard's is alleged to have violated and the conduct supporting our conclusion that she violated those rules.

### *Meritorious Claims and Contentions – Wyo. R. Prof. Conduct 3.1*

[¶55] As reflected in footnote 1, Wyo. R. Prof. Conduct 3.1(a) and (c), respectively, prohibit a lawyer from asserting frivolous claims and provide that by his or her signature an attorney certifies that a court document is not submitted for an improper purpose, such as unnecessary delay or to increase the cost of litigation. In *Fields*, after service of discovery requests on her clients in August of 2006, Ms. Richard still had not provided adequate responses three months later when Judge Guthrie entered the first court order requiring her to participate in meaningful discovery. Despite Judge Guthrie's order, Ms. Richard still had not provided complete discovery responses nearly a year later when in September 2007, Judge Cranfill issued his decision letter again ordering her clients to provide detailed answers to the same discovery requests indentified in the earlier order. After a hearing in January 2008, nearly a year and a half after service of the discovery requests and after a third motion to compel, Judge Cranfill in March of 2008 dismissed the case with prejudice based solely on the egregious failure by Ms. Richard and her clients to comply with the court's orders to provide meaningful discovery.

[¶56] In the three orders entered over the course of nearly a year and a half, two district judges concluded that Ms. Richard had not participated in meaningful discovery and

disregarded their orders to do so. By her conduct, Ms. Richard caused unnecessary delay and increased the cost of litigation. Clear and convincing evidence supports the conclusion that in *Fields* Ms. Richard violated Wyo. R. Prof. Conduct 3.1.

[¶57] As noted above, counsel for Ms. Richard conceded in oral argument that his client failed to comply with the magistrate's discovery orders in *AECOM*. The record also shows that rather than complying with one of those orders, Ms. Richard appealed the order to Judge Downes. Even after orders from the magistrate and Judge Downes required her to provide proper discovery responses, Ms. Richard continued to withhold discovery resulting in another motion to compel and order granting the motion. Ms. Richard also made frivolous claims in *AECOM*. First, after pleading the parties prior course of dealings in her answer, she claimed that evidence of the parties' prior dealings was not relevant and would not be produced. Second, after incorrectly attributing the $50,000 cost overrun figure to Centennial in her answer, she continued to make the same assertion in court documents even after her witness testified the figure was not Centennial's, but his. Ultimately, Judge Downes concluded Ms. Richard's obstructive behavior was willful, detrimental to the judicial process and departed from acceptable standards of conduct and imposed sanctions of nearly $60,000. Consistent with her earlier behavior in the case, Ms. Richard appealed the order imposing sanctions to the Tenth Circuit Court of Appeals. The order was affirmed. As in *Fields*, Ms. Richard's actions in *AECOM* caused unnecessary delay and increased the cost of litigation. Clear and convincing evidence supports the conclusion that Ms. Richard violated Wyo. R. Prof. Conduct 3.1 in *AECOM*.

[¶58] Wyo. R. Prof. Conduct 3.1 (a) prohibits a lawyer from asserting an issue unless there is a basis in law and fact for doing so that is not frivolous. Rule 3.1 (c) contemplates that by his or her signature, a lawyer certifies that a pleading is well grounded in fact and warranted by good faith argument. In *Shindell*, Ms. Richard drafted and signed a pleading in 2011 asserting the father was physically and emotionally abusive to his children, lacked the ability to provide adequate care for them during visitation and was increasingly abusive and destructive. When Ms. Richard made these assertions in the pleading, the counselor upon whose opinions she was relying was not the children's counselor and had not been their counselor since 2002 or 2003. Under these circumstances, the assertions in her 2011 pleading concerning the father were not well grounded in fact and were not warranted by good faith argument. Clear and convincing evidence supports the conclusion that Ms. Richard violated Wyo. R. Prof. Conduct 3.1 in *Shindell*.

[¶59] In *Dorf*, after obtaining an extension of time to file a responsive brief, Ms. Richard signed and filed a few minutes before midnight on the due date a rough draft of the brief containing typographical errors and incomplete citations to legal authority. In the same document, she requested leave to amend her complaint and asked the court to reconsider a prior ruling. She attempted to correct the errors in the brief by filing revisions the

following evening after the deadline. Still later, she filed a motion for an extension of the already extended deadline to allow her to file the revisions. Upon being informed the rules did not allow her to submit two documents in one submission and she would need to re-file her brief and motion to amend separately, Ms. Richard re-filed the same document twice, stating that the same argument and authority applied to both. Ms. Richard's request for an extension of time to fix typographical errors and provide complete legal authority to what amounted to a rough draft did not constitute a good faith argument for the extension. Clear and convincing evidence supports the conclusion that in *Dorf* Ms. Richard violated Rule 3.1.

### *Expediting Litigation – Wyo. R. Prof. Conduct 3.2*

[¶60] Wyo. R. Prof. Conduct 3.2, set out in footnote 1, requires a lawyer to make reasonable efforts to expedite litigation. As reflected in the facts and discussion above, Ms. Richard by her actions did the exact opposite in *Fields* and *AECOM*. Discovery that should have been provided earlier was not provided, nor was it provided after court orders to produce it. Rather than expediting the litigation, Ms. Richard's refusal resulted in dismissal of the complaint in *Fields* and delay and significant monetary sanctions in *AECOM*. Clear and convincing evidence supports the conclusion that in *Fields* and *AECOM* Ms. Richard violated Wyo. R. Prof. Conduct 3.2. The record likewise supports that conclusion in *Starrett* and *Haden*.

[¶61] In *Starrett*, Ms. Richard persisted in attempting to discover evidence concerning two lots after the district court barred claims concerning those lots. Additionally, after submitting her pretrial memorandum listing Starrett's exhibits and after the pretrial conference, Ms. Richard submitted an amended exhibit list one week before trial in which she re-numbered previous exhibits and added new ones. Two days before trial she submitted yet another revised exhibit list adding differently numbered and new exhibits. Judge Sanderson's orders also reflect difficulty in getting Ms. Richard to simplify the issues so the court could make evidentiary rulings and delay caused by motions to revive or reconsider matters previously decided. After Judge Sanderson dismissed her counterclaim, Ms. Richard appealed and this Court affirmed his decision. After Judge Sanderson dismissed the remaining claims on remand, Ms. Richard filed a second appeal claiming again that the counterclaim survived. She also claimed error in the denial of her motion for attorney fees, even though her client clearly was not the prevailing party in the litigation. Contrary to Rule 3.2, these actions by Ms. Richard unnecessarily delayed rather than expedited the litigation.

[¶62] The record in *Haden* likewise reflects a course of action on Ms. Richard's part that delayed and obstructed the litigation. Despite opposing counsel's repeated efforts to obtain discovery, Ms. Richard unreasonably delayed in producing computers for inspection, documents obtained from computer inspections and privilege logs identifying documents that were withheld. Her actions with regard to the inspection when it finally

did occur were obstructionist and caused further expense and delay. Clear and convincing evidence supports the conclusion that she violated Rule 3.2.

### *Candor Toward the Tribunal – Wyo. R. Prof. Conduct 3.3*

[¶63] Wyo. R. Prof. Conduct 3.3(a) prohibits a lawyer from making a false statement of fact or law to a tribunal and, when such a statement is made, requires a lawyer to correct it. Rule 3.3(c) prohibits a lawyer from offering evidence that he or she knows to be false and requires the lawyer to take remedial measures if such evidence is offered. In *AECOM*, evidence was presented that Ms. Richard said she would disclose information and then did not disclose it. She also filed an affidavit stating that she had reviewed all the documents she was withholding and they were privileged or prepared in anticipation of litigation when many of the documents clearly were not privilege or prepared in anticipation of litigation. In addition, Ms. Richard made an allegation in her counterclaim that was not true; then, even after a witness testified it was not true, Ms. Richard submitted a pretrial memorandum and jury instruction to the court containing the same false allegation. She stated facts in her brief in response to a summary judgment motion that were not supported by the referenced affidavit. Clear and convincing evidence supports the conclusion that Ms. Richard's actions in AECOM violated Wyo. R. Prof. Conduct 3.3.

[¶64] Ms. Richard likewise violated Rule 3.3 when in *Starrett* she represented to the court that her re-revised exhibit list submitted two days before trial added only depositions when, in fact, her final exhibit list identified other exhibits that had not been listed previously. Finally, the statement in her 2011 petition in *Shindell* that a counselor who had not seen the children since 2002 and 2003 believed their father was "increasingly abusive" supports the conclusion that Ms. Richard violated Rule 3.3. The statements are particularly troubling given that they were made in a case involving children where candor before the tribunal is especially critical.

### *Fairness to Opposing Party and Counsel – Wyo. R. Prof. Conduct 3.4*

[¶65] Wyo. R. Prof. Conduct 3.4 prohibits a lawyer from obstructing another party's access to evidence or knowingly disobeying an obligation under the rules of the tribunal and requires a lawyer to make reasonably diligent efforts to comply with proper discovery requests. As discussed above, Ms. Richard obstructed another party's access to evidence and failed to make reasonable efforts to comply with proper discovery requests in *Fields*, *AECOM*, *Starrett* and *Haden* by refusing to produce discoverable information, forcing opposing counsel to file repeated motions to compel and disobeying court orders to produce the requested information.

[¶66] Additionally, Ms. Richard knowingly disobeyed an obligation under the rules of the tribunal in *Miller* when after Judge James ruled that opposing counsel would be

allowed to finish his cross examination and no time limit would be set, she continued to insist on setting a time limit. Our review of the video tape confirms that she acted in deliberate indifference to fundamental discovery rules, the judge's order, the rules of professional conduct and basic professionalism. Ms. Richard also knowingly disobeyed an obligation under the rules of the tribunal in *Dorf* when she filed a rough draft of a brief and then, after the filing deadline had passed, filed a corrected version and, still later, filed a motion to file the corrected version. Clear and convincing evidence exists in these six cases that Ms. Richard violated Rule 3.4.

### *Impartiality and Decorum of the Tribunal – Wyo. R. Prof. Conduct 3.5*

[¶67]   Rule 3.5(d) prohibits a lawyer from engaging in conduct intended to disrupt a tribunal. Comment [5] specifies that the duty to refrain from disruptive conduct applies to any proceeding of a tribunal, including a deposition. In *Miller*, Ms. Richard engaged in disruptive conduct when, during the video-tape trial deposition, she interrupted opposing counsel's cross examination of the witness and insisted that she be allowed to finish her questioning so that she could leave. When opposing counsel objected, Ms. Richard questioned the witness over his efforts to stop her. After a phone call to the district court judge, who ruled that opposing counsel was allowed to complete his cross examination before Ms. Richard resumed questioning and no time limit would be set on the examination, Ms. Richard continued to argue that time limits be set. When the phone call concluded, Ms. Richard ignored the judge's ruling and demanded that opposing counsel limit his questioning to a specific time. The record demonstrates that Ms. Richard violated Wyo. R. Prof. Conduct 3.5 in *Miller*.

### *Misconduct involving dishonesty, fraud, deceit or misrepresentation – Wyo. R. Prof. Conduct 8.4(c)*

[¶68]   Rule 8.4(c) provides that a lawyer commits professional misconduct when he or she engages in conduct involving dishonesty, fraud, deceit or misrepresentation. The evidence in *AECOM*, *Starrett*, *Haden* and *Shindell* demonstrates that Ms. Richard made repeated misrepresentations concerning discovery and other matters and proves clearly and convincingly that she violated Rule 8.4(c).

### *Misconduct – conduct prejudicial to administration of justice – Wyo. R. Prof. Conduct 8.4(d)*

[¶69]   Rule 8.4(d) provides that a lawyer commits professional misconduct when he or she engages in conduct that is prejudicial to the administration of justice. Ms. Richard's conduct in *AECOM, Starrett, Shindell, Miller* and *Dorf* was prejudicial to the administration of justice. The evidence clearly and convincingly shows that she violated Rule 8.4(d).

*Determination of Appropriate Sanctions*

[¶70]  In its Report and Recommendation regarding imposition of appropriate sanctions, the Board found in pertinent part as follows:

267.    In determining an appropriate sanction, the Board is guided by the American Bar Association's "Standards for Imposing Lawyer Discipline" (hereafter referred to as the "ABA Standards") which state, "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession."

268.    ABA **Standard 3.0** lists four factors to be considered in imposing a sanction after a finding of lawyer misconduct:

(a)   the duty violated;
(b)   the lawyer's mental state;
(c)   the potential or actual injury caused by the lawyer's misconduct; and
(d)   the existence of aggravating or mitigating factors.

The First Factor: The Duty Violated

269.    Much of Respondent's misconduct falls within the heading "Violation of Duties Owed to the Legal System," which the ABA Standards subcategorize as "False Statements, Fraud and Misrepresentation" (**Standard 6.1**) and "Abuse of the Legal Process" (**Standard 6.2**).  These standards apply to situations in which lawyers are found to have violated Rules 3.1, 3.2, 3.3, 3.4 and 3.5.

270.    **Standard 6.1**, "False Statements, Fraud, and Misrepresentation," provides:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving conduct that is prejudicial to the administration of

28

justice or that involves dishonesty, fraud, deceit, or misrepresentation to a court:

> 6.11 Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.
>
> 6.12 Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.
>
> 6.13 Reprimand [i.e., "public censure" under Section 4(a)(iii) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer is negligent either in determining whether the statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the legal system, or causes an adverse or potentially adverse effect on the legal proceeding.
>
> 6.14. Admonition [i.e., "private reprimand" under Section 4(b) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer engages in an isolated instance of neglect in determining whether the submitted statements or documents are false or in failing to disclose material information upon learning of its falsity, and causes little or no actual or potential injury to a party, or causes little or no adverse or potentially adverse effect on the legal proceeding.

271. **[Standard] 6.2**, "Abuse of the Legal Process," provides:

> Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving failure to expedite litigation or bring a meritorious

29

claim, or failure to obey any obligation under the rules of the tribunal except for an open refusal based on an assertion that no valid obligation exists:

> 6.21 Disbarment is generally appropriate when a lawyer knowingly violates a court order or a rule with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.
> 6.22 Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.
> 6.23 Reprimand [i.e., "public censure" under Section 4(a)(iii) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.
> 6.24 Admonition [i.e., "private reprimand" under Section 4(b) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer engages in an isolated instance of negligence in complying with a court order or rule, and causes little or no actual or potential injury to a party, or causes little or no actual or potential interference with a legal proceeding.

272.     **Standard 5.1** sets forth the sanction guidelines for lawyers who demonstrate a failure to maintain personal integrity and is applicable to situations in which lawyers have committed a violation of Rule 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation):

> Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases [. . .] with conduct involving dishonesty, fraud, deceit, or misrepresentation:

> 5.11   Disbarment is generally appropriate when:
>      (a) [criminal act]

30

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

5.12 [Criminal conduct]

5.13 Reprimand [i.e., "public censure" under Section 4(a)(iii) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.

5.14 Admonition [i.e., "private reprimand" under Section 4(b) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law.

The Second Factor: The Lawyer's Mental State

273. The preamble to the ABA Standards includes the following discussion regarding mental state:

The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.

274. Given that the Board has found multiple violations of each of these categories of the Rules, the appropriate sanction under the Guidelines therefore turns on whether the Board finds Respondent to have acted "knowingly" or "intentionally" as so defined. There is no

31

question under the clear and convincing evidence presented at the hearing but that Respondent's misconduct was intentional.

### The Third Factor: The Potential or Actual Injury Caused by the Lawyer's Misconduct

275.     Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

276.     As is demonstrated by the Board's detailed findings . . . with respect to Respondent's misconduct, in each of the seven cases Respondent's misconduct inflicted actual, substantial injury on the parties, their counsel and the court. Taken together, these acts of misconduct demonstrate contempt on the part of Respondent for the legal process, the rules governing that process, and the administration of justice. The actual costs in terms of increased expenses, delays and burdens on the parties, their counsel and the courts are incapable of being fully measured.

### The Fourth Factor: The Existence Of Aggravating Or Mitigating Factors

277.     ABA **Standard 9.0**, entitled "Aggravation and Mitigation," provides as follows:

9.1     *Generally*

After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.

9.2     *Aggravation*

9.21 *Definition*. Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

9.22 *Factors which may be considered in aggravation*. Aggravating factors include:
  (a)  prior disciplinary offenses;
  (b)  dishonest or selfish motive;
  (c)  a pattern of misconduct;
  (d)  multiple offenses;
  (e)  bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
  (f)  submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
  (g)  refusal to acknowledge wrongful nature of conduct;
  (h)  vulnerability of the victim;
  (i)  substantial experience in the practice of law;
  (j)  indifference in making restitution; and
  (k)  illegal conduct, including that involving the use of controlled substances.

9.3 *Mitigation*

9.31 *Definition*. Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

9.32 *Factors which may be considered in mitigation*. Mitigating factors include:
  (a)  absence of a prior disciplinary record;
  (b)  absence of a dishonest or selfish motive;
  (c)  personal or emotional problems;
  (d)  timely good faith effort to make restitution or to rectify consequences of misconduct;
  (e)  full and free disclosure of disciplinary board or cooperative attitude toward proceedings;
  (f)  inexperience in the practice of law;

(g)  character or reputation;
(h)  physical disability;
(i)  mental disability or chemical dependency including alcoholism or drug abuse when:
    (1)  there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
    (2)  the chemical dependency or mental disability caused the misconduct;
    (3)  the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
    (4)  the recovery arrested the misconduct and recurrence of that misconduct is unlikely.
(j)  delay in disciplinary proceedings;
(k)  imposition of other penalties or sanctions;
(1)  remorse; and
(m)  remoteness of prior offenses.

9.4  *Factors Which Are Neither Aggravating nor Mitigating.*

The following factors should not be considered as either aggravating or mitigating:
(a)  forced or compelled restitution;
(b)  agreeing to the client's demand for certain improper behavior or result;
(c)  withdrawal of complaint against the lawyer;
(d)  resignation prior to completion of disciplinary proceedings;
(e)  complainant's recommendation as to sanction; and
(f)  failure of injured client to complain.

278.  The Board finds that Respondent's payment of the $58,000 sanction award in [*AECOM*], which Respondent testified was a requirement of AECOM in order to gain its consent for Respondent to pursue the appeal of Judge Downes's order, is a factor that should not be considered as either aggravating or mitigating.

34

279. The Board finds the following mitigating factors: (1) absence of a prior disciplinary record and (2) personal or emotional problems. Respondent testified that during a portion of the period during which the misconduct . . . occurred, she was going through a divorce and dealing with its consequences. Respondent also offered testimony of her background that resulted in her responding to challenges in a dysfunctional and not constructive manner. Witnesses for respondent described therapy modalities that would benefit Respondent to deal with her responsive mechanism when challenged.

280. The Board finds the following aggravating factors: (1) substantial experience in the practice of law (2) dishonest motive; (3) a pattern of misconduct; (4) multiple offenses; (5) vulnerability of the victim; (6) refusal to acknowledge the wrongful nature of her conduct; and (7) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the Disciplinary Code and the orders of the Board.

281. The Board's finding of vulnerability of the victim in this matter encompasses several "victims." As discussed above, the parties, their counsel, the courts and the legal profession generally have all suffered as a result of Respondent's actions.

282. With respect to Respondent's refusal to acknowledge the wrongful nature of her conduct, the Board finds that although Respondent expressed remorse near the end of the hearing, at every prior stage of the disciplinary proceeding Respondent was defiant and emphatic in her denial of any wrongdoing on her part, as she was in each of the underlying litigation matters.

283. The pleadings filed by the Respondent that were repeated and re-argued after having been denied, is evident upon review of the transcript of the final pretrial conference.[6] Those actions in this proceeding are further

---

[6] Among the documents Ms. Richard filed in the disciplinary process were the following: Petition for Investigation into Breaches of Confidentiality in the Matter of Andrea Richard; Motion to Disclose

evidence of the Respondent's conduct and how she repeated in this matter, the same conduct that was found in the different matters to be a violation of the Rules of Professional Conduct. Such conduct includes intentionally failing to comply with the Disciplinary Code and the orders of the Board. To not be caught up in the unnecessary generation of words and pages any more than it already has, the Board simply refers to the record in this matter as the pleadings evidence the Respondent's conduct of disregarding the rules. The record further exhibits the same inability or unwillingness to comply with the orders of the tribunal as with different courts, and the same behavior appears to be calculated to obstruct the process.

284. Suffice it to say that the record is replete with evidence of Respondent's conduct in this disciplinary proceeding of her intentional failure to comply with the Disciplinary Code the orders of the Board, just as she has with the different courts. Such conduct is found to be evidence of obstruction of the process

285. In light of the foregoing findings, the appropriate sanction is a three-year suspension of Respondent's right to practice law in Wyoming. While the Board is unable to require counseling, it urges Respondent to seek assistance in order to avoid repetition of past practice.

[¶71] Although the Board recommended a three-year suspension from the practice of law as the appropriate sanction, bar counsel urges this Court to disbar Ms. Richard from

Exculpatory and Impeachment Evidence; Reply to Bar Counsel's Response to Motion to Disclose Exculpatory and Impeachment Evidence; Request for and Memorandum in Support of Special Bar Counsel; Opposition to Bar Counsel's Motion for Leave to File Second Amended Formal Charge; Withdrawal of Request for Special Bar Counsel; Response to Motion for Order Directing Respondent to Cease and Desist [in filings with officers and commissioners of the State Bar]; Opposition to Bar Counsel's Motion to Compel; Motion for Summary Judgment; Opposition to Bar Counsel's Motion for Leave to File Fourth Amended Formal Charge; Opposition to Bar Counsel's Motion for Protective Order; Reply Brief in Support of Motion for Summary Judgment; Supplemental Witness and Exhibit List; Motion to Bifurcate; Opposition to Bar Counsel's Motion for Sanctions; Request for Additional Time to File Motion to Expand Board's Protective Order; Motion for Individual Trials and Separate Decisions on Each Charge; Motion to Dismiss for Bar Counsel's Usurpation of the Judicial Oversight Function; Motion for Dismissal and Disqualification of Current Bar Counsel; Objections to Order on Final Pretrial Conference; Proposed Report and Recommendation; Exhibits to Proposed Report and Recommendation; Supplemental Exhibits to Proposed Report and Recommendation; Supplemental Proposed Report and Recommendation; Opposition to Bar Counsel's Motion to Strike Respondent's Post Hearing Filings.

practicing law in the State of Wyoming. Addressing the first factor to be considered in imposing a sanction, the duty violated, bar counsel asserts that disbarment is the appropriate sanction under the Standards the Board found applicable to Ms. Richard's misconduct. Under Standard 6.1, bar counsel argues disbarment is appropriate because Ms. Richard made false statements and improperly withheld material information with the intent to deceive the court, causing serious injury to the parties and adversely affecting the legal proceeding. Sanction 6.11. Bar counsel contends disbarment is likewise appropriate under Standard 6.2 because Ms. Richard time and again knowingly violated court orders and rules, causing injury to the parties and interfering with the legal proceedings. Sanction 6.12. Bar counsel also contends disbarment is appropriate under Standard 5.1 because Ms. Richard engaged in intentional conduct involving dishonesty, deceit and misrepresentation which seriously reflects adversely on her fitness to practice law. Sanction 5.11.

[¶72] In addition to the Standards the Board found applicable to Ms. Richard's conduct, bar counsel asserts Standard 4.5 is applicable. Standard 4.5 concerns lawyers who display a lack of competence and recommends disbarment "when a lawyer's course of conduct demonstrates that the lawyer does not understand the most fundamental legal doctrines or procedures, and the lawyer's conduct causes injury or potential injury to the client." Sanction 4.51. Bar counsel contends that Ms. Richard's conduct in the seven underlying cases and the disciplinary proceeding demonstrates that she does not understand even the most basic aspects of the legal process.

[¶73] Turning to the second factor to be considered in imposing a sanction, the lawyer's mental state, bar counsel asserts the Board correctly concluded Ms. Richard's misconduct was intentional—her conscious objective was to withhold discovery, ignore court orders and rules, obstruct the legal process and gain advantage for herself and/or her client. Bar counsel further asserts the record is clear that Ms. Richard's misconduct satisfied the third factor for imposing a sanction in that it caused serious injury to the parties, opposing counsel, the courts, the judicial process and the public's confidence in the administration of justice.

[¶74] Given the Board's findings on the aggravating and mitigating factors under the fourth factor, bar counsel asserts the recommendation for a three year suspension is not sustainable. Rather, each of the duties Ms. Richard violated points to disbarment—she acted intentionally and caused serious injury. She satisfied most of the eleven aggravating factors—she has substantial experience in the practice of law, she acted dishonestly or with a selfish motive, there was a pattern of misconduct, there were multiple offenses, she acted in bad faith to obstruct the disciplinary process by intentionally failing to comply with the rules, she refused until the very end of the process to acknowledge the wrongfulness of her conduct and the victims were vulnerable. Bar counsel contends all of the evidence taken together demands disbarment as the only appropriate sanction.

[¶75] In contrast, before this Court, Ms. Richard characterizes her conduct as negligent. She asked in her brief that the Court reject the Board's report and recommendation and reverse and vacate the matter. Alternatively, she asked the Court to enter summary judgment in her favor. As yet another alternative, she asked the Court to impose a sanction such as a public or private reprimand. In oral argument, her counsel suggested imposing a period of suspension, deferring the suspension and requiring Ms. Richard to meet specified conditions, such as attending continuing legal education classes, having her work monitored by another member of the Bar and obtaining psychological counseling.

[¶76] We conclude none of the sanctions the parties have requested are appropriate in this case. The cases bar counsel cites from other jurisdictions in support of disbarment involve more serious misconduct. In *State v. Godlove*, 318 P.3d 1086, 1090 (Okla. 2013), disciplinary proceedings were commenced after a lawyer filed six cases and more than twenty pleadings collaterally attacking a final order entered in another case confirming other parties as trustees of a trust, filed more documents after the state supreme court recognized the finality of the order, filed documents on behalf of her client after he was enjoined from filing such documents, and filed three actions against the confirmed trustees and their counsel for "jurisdictional fraud" in obtaining the trusteeship. On seventeen occasions, she also sought the recusal of the assigned judge after an adverse ruling. Although she did not comply with the recusal rule by presenting her motion to the chief or presiding judge, she argued the assigned judge had no jurisdiction to act in the proceedings until the recusal motion was decided. She even filed an application asking the state supreme court to assume jurisdiction. After the disciplinary proceedings commenced, the lawyer failed to respond to the board's inquiries, did not file an answer, did not appear at the hearing and filed no documents. *Id*. at 1088. The Oklahoma court imposed a sanction of disbarment, pointing in large part to the attorney's repeated filing of frivolous litigation. *Id*. at 1095.

[¶77] *In re Caranchini*, 956 S.W.2d 910, 915-918 (Mo. 1997), in addition to discovery abuses, the lawyer filed a wrongful discharge claim although she knew her clients had released their employer from employment-related claims; pursued a slander claim even after an affidavit showed there was no factual basis for the claim; disregarded well-established state law; advanced claims by threatening to contact the media and government agencies; used a forged document to support a sexual harassment claim long after learning it was a forgery; made unsupported allegations that a manager had been the subject of prior sexual harassment charges; affirmatively represented that she did not know a party had relocated in support of a motion to join the party when she in fact knew of the relocation a year earlier; intentionally withheld the name of a significant witness in an attempt to surprise the opposing party at trial; called witnesses to testify at trial when she could not connect their testimony to her client, knowing that the court had ruled she could present the testimony only if she connected it to her client; and filed a frivolous

motion for sanctions against opposing counsel and an appeal from the denial of the motion based solely upon her personal animosity toward the lawyer. Based in large part on the evidence showing the lawyer intentionally submitted a false document, intentionally made false statements and intentionally withheld material information, the Missouri court disbarred her.

[¶78] This Court does not agree with Ms. Richard's characterization of her conduct as negligent. In case after case, she has demonstrated an intentional, willful refusal to respond appropriately to discovery requests, comply with court orders and follow the rules of procedure. She has also repeatedly demonstrated a total lack of concern for honest communication with opposing counsel and the courts. Looking at each case individually, without considering the other six cases, Ms. Richard's conduct might be seen as an isolated event, resembling behavior members of the bar have seen from some other lawyer in some other case. Taken together, however, Ms. Richard's conduct in the seven cases clearly shows not an isolated event but a consistent pattern of misbehavior affecting many, many people. Eight judges sitting in seven districts and lawyers in five different law firms have struggled with Ms. Richard's obstructionist tactics. The clients of those five law firms as well as Ms. Richard's clients have incurred unnecessary expense and been subjected to needlessly prolonged litigation because of her misconduct. The video-tape deposition in *Miller* clearly shows the witness in that case was also a victim of Ms. Richard's unacceptable behavior.

[¶79] Ms. Richard's actions bring her perilously close to disbarment. However, no accusation has been made that she repeatedly filed frivolous lawsuits, as occurred in *Godlove*, or that she knowingly used a forged document or filed multiple lawsuits for which she knew there was no basis, as occurred in *Caranchini*. Although we view Ms. Richard's conduct as unacceptable, extremely serious and an abuse of the judicial system, we are not persuaded that disbarment is the appropriate sanction. Neither do we agree that a public or private reprimand is sufficient. Ms. Richard's repeated violation of the rules and court orders demonstrates that a period of time away from the practice of law is warranted and necessary. Although disbarment is within the range of possible sanctions for the violations that occurred in the seven cases, the Board decided after hearing the testimony of all the witnesses not to recommend disbarment. Given the Board's recommendation and the fact that Ms. Richard has no prior disciplinary record, this Court concludes based upon this record and these facts that a three year suspension from the practice of law is an appropriate sanction. However, given her multi-year pattern of behavior, there is a probability that other complaints may come before the Board, and in that event this Court may have no alternative but to impose a sanction of disbarment.

[¶80] Our duty in cases of lawyer misconduct is to protect the public. Despite court orders to comply with the rules, stern words from respected judges, dismissals of her cases, and the imposition of sanctions, Ms. Richard has continued to demonstrate behaviors in litigation that are simply not acceptable. Even in this matter, Ms. Richard's

actions unnecessarily thwarted, obstructed and delayed the disciplinary process. Other than the belated statements of her counsel during this appeal, there is nothing in this record to indicate that Ms. Richard has learned anything from any of the seven cases or this proceeding. The judicial system must respond in a manner that protects the public from Ms. Richard's extensive pattern of behavior that has affected so many people. A three year suspension from practicing law provides that protection. In accordance with § 24 of the Wyoming Disciplinary Code, Ms. Richard may petition the Board for reinstatement ninety days prior to the expiration of the three year period. If she hopes to return to the practice of law at that point, Ms. Richard must use those three years to inform herself as to the duties and responsibilities of members of the Wyoming Bar, basic legal procedure and the rules of practice applicable in Wyoming courts.

[¶81] **IT IS, THEREFORE, ORDERED THAT:**

1. Andrea L. Richard shall be suspended from the practice of law for a period of three years, commencing August 1, 2014;

2. Within 15 days of the date of the final order of suspension, Andrea L. Richard shall comply with all requirements of Rule 22 of the Disciplinary Code;

3. By January 30, 2015, Andrea L. Richard shall pay costs of $41,770.76 associated with the disciplinary proceedings and an administrative fee of $500;

4. Prior to seeking reinstatement to the practice of law in Wyoming, Andrea L. Richard shall complete the continuing legal education course required for new admittees to the bar specified in Continuing Legal Education Rule 4(b)(1) and (2).

[¶82] **DATED** this 1st day of August, 2014.

**BY THE COURT**[*†]

/s/

**E. JAMES BURKE**
**Chief Justice**

[*]Justice Hill took no part in the consideration of this matter. Judge Waldrip participated by assignment.

[†]**WALDRIP, D.J.**, dissents from the sanction imposed by the majority for the following reasons:

[¶83] The sanction imposed by the majority in this case is a close call. I firmly agree with the reasoning of the well-written Order and particularly the statement that:

> [o]ur duty in cases of lawyer misconduct is to protect the public. Despite court orders to comply with the rules, stern words from respected judges, dismissals of her cases, and the imposition of sanctions, Ms. Richard has continued to demonstrate behaviors in litigation that are simply not acceptable.

As a result, I must disagree with the sanction of a three-year suspension. I would disbar Ms. Richard. She has, from the beginning of this procedure until the very end, shown no sincere remorse. Even in argument before this Court, she blamed others for her misconduct rather than recognize her inappropriate behaviors. Under these circumstances, I believe this tribunal's obligation to protect the public requires the ultimate sanction of disbarment.