# IN THE SUPREME COURT, STATE OF WYOMING

## 2019 WY 117

OCTOBER TERM, A.D. 2019

*November 19, 2019*

SUZAN D. FRITCHEL; ALEXANDRA J.
WHITE, DREW ANN WHITE; GAVIN M.
TERRY; ISAAC T. WHITE; JACOB A.
TERRY; and KERRY P. WHITE,

Appellants
(Plaintiffs),

v.                                                                          S-19-0035

MARCUS WHITE, in his capacity as the
Personal Representative of the Estate of John
E. White, and THE ESTATE OF JOHN E.
WHITE, a/k/a JOHN EDWARD WHITE,

Appellees
(Defendants).

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*
Robert J. Walker of Hickey & Evans, LLP, Cheyenne, Wyoming. Argument by Mr. Walker.

*Representing Appellee:*
Justin Newell Hesser of Hesser Law, LLC, Cheyenne, Wyoming. Argument by Mr. Hesser.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN**, Justice.

[¶1]    Appellants, a sub-group of limited partners in the John E. White Family Limited Partnership (the Limited Partnership),[1] filed a direct action against the Appellees[2] to remedy losses incurred when John E. White (the Decedent) disposed of the Limited Partnership's real property.[3]  The Appellees moved to dismiss the complaint, arguing that the limited partners alleged derivative harms that had to be filed as a derivative action.  The district court agreed and dismissed the complaint.  Because the Decedent's property transaction injured the Limited Partnership, not the limited partners directly, Appellants must seek their remedy through a derivative action on behalf of the Limited Partnership.  Consequently, we affirm.

### ISSUE

[¶2]    The Appellants raise two issues on appeal:
> 1.  Did the [d]istrict [c]ourt err by failing to recognize an independent right of a limited partner of a partnership in dissolution, without a general partner, to bring a direct action against the former general partner; and
> 2.  Did the [d]istrict [c]ourt err by failing to recognize that the Appellants pled separate and distinct injuries from those suffered by the partnership as a whole.

[¶3]    The dispositive issue is whether the Appellants' complaint asserts any facts which would entitle them to relief in the form of a direct action.

### FACTS

[¶4]    The Decedent created the Limited Partnership for estate planning purposes, gifting small ownership interests to his four children, their spouses, and his grandchildren (the Limited Partners).  He was the sole general partner.  The Limited Partnership held in its name real property in Pueblo, Colorado (the Pueblo Property), which it acquired in 1999. In February 2006, the Decedent, acting alone as the sole general partner, sold the Pueblo Property to Robert D. Kennedy for $600,000 in a seller-financed transaction.  The Limited Partnership retained a promissory note in its name for $545,000, with a deed of trust over the property as security.  More than two years later, in June 2008, the Decedent, again

---

[1] Appellants include Suzan D. Fritchel, Alexandra J. White, Drew Ann White, Gavin M. Terry, Isaac T. White, Jacob A. Terry, and Kerry P. White.  John E. White, the Decedent's grandson, joined the complaint but did not join this appeal.

[2] Appellees include Marcus White, in his capacity as the Personal Representative of the Estate of John E. White, and the Estate of John E. White.

[3] Sara L. White and Miranda J. White, two of the Decedent's grandchildren, joined neither the complaint nor this appeal.

acting alone as the sole general partner, consented to Mr. Kennedy's sale of the Pueblo Property directly to William B. Gradishar and Tiffany Moruzzi. Mr. Gradishar and Ms. Moruzzi assumed the promissory note with the Decedent's consent.

[¶5] The critical event for this appeal occurred in November 2012, when the Decedent, acting in his individual capacity, released Mr. Gradishar and Ms. Moruzzi from the "contract for deed purchase" and from "all real estate taxes, back payments, late payments charges, interest, etc." Instead of transferring the Pueblo Property to the Limited Partnership, however, Mr. Gradishar and Ms. Moruzzi deeded the Pueblo Property by quitclaim deed to Decedent in return for $30,000.[4] At no point during this transaction did the Decedent reimburse or consult the Limited Partnership or its limited partners.

[¶6] The Decedent died in November 2017 with the Pueblo Property in his estate. His estate plan—a combination of a pour-over will and a revocable trust—required distribution in equal shares to his four children. Per the terms of the Partnership Agreement, the Decedent's death constituted an event of withdrawal of the sole general partner— dissolving the Limited Partnership, and requiring it to wind up and terminate.

[¶7] After discovering the transaction, all of the limited partners except the Decedent's children and two granddaughters, Sara L. White and Miranda J. White, filed a complaint, which focuses on the Decedent's transaction concerning the Pueblo Property and sets forth the same facts outlined above. In the complaint, Appellants allege they were injured because the Decedent never "reimbursed the [Limited Partnership], and by extension the [Appellants], for the [Limited Partnership's] lost income resulting from [the Decedent's] forgiving of the Promissory Note and taking back of the [Property] in his individual name." They allege four causes of action: Breach of Partnership Agreement; Breach of Fiduciary Duty; Constructive Fraud; and Conversion. Appellants also sought a Declaratory Judgment.

[¶8] Appellees moved to dismiss the complaint because the Appellants failed "to allege any direct injury" to themselves and, instead, claimed a derivative injury to the Limited Partnership which must be brought in a derivative action. The district court granted Appellees' motion, and the Appellants timely appealed.

[¶9] Additional facts are set forth below as necessary.

---

[4] Appellees assert this may have occurred because Mr. Gradishar and Ms. Moruzzi could not make the required payments on the promissory note, and the Decedent agreed to release them from the obligations in exchange for the Pueblo Property.

*STANDARD OF REVIEW*

[¶10] The district court granted Appellees' motion to dismiss pursuant to W.R.C.P. 12(b)(6), finding that Appellants failed to state a claim upon which relief can be granted.

> Our standard for review of [a 12(b)(6)] dismissal is well known: (1) we accept the facts stated in the complaint as true and view them in the light most favorable to the appellant; (2) we sustain the dismissal only if it is certain from the face of the complaint that the appellant cannot assert any facts that would entitle him to relief; (3) we employ the same standards and examine the same materials as did the district court; and (4) such review is *de novo*.

*Dowlin v. Dowlin*, 2007 WY 114, ¶ 6, 162 P.3d 1202, 1204 (Wyo. 2007) (quoting *Becker v. Mason*, 2006 WY 143, ¶ 5, 145 P.3d 1268, 1270 (Wyo. 2006)).

### *DISCUSSION*

### *Appellants' complaint failed to assert any facts entitling them to relief in the form of a direct action.*

[¶11] This case presents a new twist on an old conflict: whether the injury alleged gives rise to a direct or derivative action. Appellants argue that Decedent's failure to reimburse the Limited Partnership caused direct injury for two reasons: the Decedent breached fiduciary duties which he owed them individually and they suffered a different type of injury than the rest of the limited partners (i.e., the Decedent's children). In the alternative, they argue that even if the injury is derivative, district courts should have discretion to permit derivative injuries to be remedied through direct claims. Finally, they contend that if district courts do not have such discretion, then a direct action should be allowed in this instance because Appellants cannot meet the demand rule. We conclude that the injury is derivative, decline to adopt a discretionary rule, and determine that the demand rule can be met.

#### A.      Appellants plead a derivative injury.

[¶12] Although limited partnerships are distinct from corporations, we have looked to relevant corporate law to determine whether a claim is direct or derivative. *See Wallop Canyon Ranch, LLC v. Goodwyn*, 2015 WY 81, ¶ 29, 351 P.3d 943, 952 (Wyo. 2015) (citation omitted). In corporate law, we look to the bearer of the injury to determine the nature of the claim: "[W]hen the director (or shareholder or member) seeks to remedy an

injury to the corporation rather than himself, the action is derivative in nature." *Sullivan v. Pike & Susan Sullivan Found.*, 2018 WY 19, ¶ 22, 412 P.3d 306, 312 (Wyo. 2018).

[¶13]   The distinction between a direct and derivative action is important. *Mantle v. North Star Energy & Constr. LLC*, 2019 WY 29, ¶ 154, 437 P.3d 758, 807 (Wyo. 2019).  A direct action is one to enforce a limited partner's rights against its limited partnership.  *See Black's Law Dictionary* 576 (11th ed. 2019).   A derivative action is one "by one or more stockholders to enforce a corporate cause of action."  *GOB, LLC v. Rainbow Canyon, Inc.*, 2008 WY 157, ¶ 13, 197 P.3d 1269, 1272 (Wyo. 2008) (quoting Wright, Miller & Kane, *Federal Practice and Procedure: Civil* 3d § 1821, at 6 (2007)).

[¶14]   In *Wallop Canyon Ranch, LLC*, we articulated the test to determine whether a claim is direct or derivative.  *Wallop Canyon Ranch, LLC*, ¶ 29, 351 P.3d at 951–52 (quoting 59A Am.Jur.2d *Partnership* § 906, at 821 (2003)).  We look to whether the plaintiff alleged a "special injury":

> A claim is derivative in nature where the plaintiff was not injured "directly or independently" of the partnership. Furthermore, in determining whether or not a claim is direct or derivative, the court must look ultimately to whether the plaintiff has alleged a special injury.  Where a suit by a limited partner against a general partner clearly alleges wrongs to the partnership which have indirectly damaged the limited partner, the action asserts a derivative claim on behalf of the partnership, not one personal to the plaintiff.
>
> In ascertaining whether a cause of action arising in a limited partnership context is derivative, it is appropriate to look to corporate law for guidance. Under the latter law, the nature of the wrong alleged is what controls.

*Id.*

[¶15]   To determine the nature of the wrong alleged, "[t]he 'prevailing criterion is whether the claimed injury is primarily to the partnership and only indirectly to the partners through their interest in the partnership—a partnership claim—or is direct and unique to the partner(s)—an individual claim.'"  *Golden Tee, Inc. v. Venture Golf Sch., Inc.*, 333 Ark. 253, 260 (Ark. 1998) (quoting 4 *Alan R. Bromberg and Larry E. Ribstein on Partnership* § 15.04(f), at 15:31 (1997)).  In the context of limited partnerships, a derivative suit is appropriate when the nature of the injury is to the limited partnership; and a direct suit is appropriate when the nature of the injury is to the limited partners.  *See Wallop Canyon Ranch, LLC*, ¶ 29, 351 P.3d at 951–52.

5

[¶16]   Viewing the facts of the complaint as true and in the light most favorable to the Appellants, the only injury alleged is the amount of money equal in value to the promissory note, plus interest, lost by the Limited Partnership: such an injury is derivative in nature.

### 1. Breach of fiduciary duties

[¶17]   Appellants argue they suffered a direct injury because the Decedent breached "the duty to account for any property the partner is holding in trust; the duty to refrain from competing with the partnership; the duty of loyalty; and the duty of good faith and fair dealing" when he purchased the Pueblo Property without reimbursing the Limited Partnership.   This argument fails because that alleged injury stems from, and is not independent of, an injury first incurred by the Limited Partnership.

[¶18]   Subject to statute and partnership agreement, "a general partner of a limited partnership . . . has the same duties as a partner in a general partnership."  *Id.* ¶ 48, 351 P.3d at 956; *see also* Wyo. Stat. Ann. § 17-14-503(a) (LexisNexis 2019).  Those duties are the duty of loyalty and the duty of care set forth in Wyoming Statute § 17-21-404.  The general partner owes those duties "to the [limited] partnership and the [limited] partners."[5] Wyo. Stat. Ann. § 17-21-404 (LexisNexis 2019); *accord Wallop Canyon Ranch, LLC*, ¶ 48, 351 P.3d at 956–57.

[¶19]   We have not considered whether a general partner's breach of a fiduciary duty owed to both the limited partnership and limited partners should be remedied by a direct or derivative cause of action.  Other courts have.  *See Golden Tee, Inc.*, 333 Ark. at 264–65. In *Golden Tee, Inc.*, the Arkansas Supreme Court found, as we have, that the nature of the alleged injury controls whether the injury should be remedied by a direct or derivative action.  *Id.*   There, a limited partner asserted that the general partner breached fiduciary duties but failed to identify how "the limited partners have sustained separate or individual injuries, independent of the [Limited Partnership], as a result of the purported breach." *Id.* at 257, 265.   Instead, the alleged injuries were to the limited partnership and, as a result, had to "be brought in a derivative action for damages to the" limited partnership.  *See id.* at 265.   Likewise, here, the Appellants' alleged injury stems from the Decedent's alleged breach of fiduciary duties he owed to them, but they fail to identify how that injury is independent of the injury to the Limited Partnership.  *See id.*   Consequently, the alleged breach of fiduciary duty in this case must be remedied through a derivative action.  *See id.*

---

[5] The Partnership Agreement does not impose any fiduciary duties beyond those required by statute. Appellants assert that the Decedent's dealings with the Pueblo Property "breached the partnership agreement," but fail to identify how any such alleged breach gives rise to an independent cause of action.

### 2. Special injury

[¶20]  Appellants also argue that a direct cause of action is appropriate because not all of the limited partners suffered the same injury.  Appellants' precise argument tracks the distribution of the Pueblo Property: while the Decedent's children receive 25% of the Pueblo Property through his estate plan, the Appellants receive nothing through their devalued interests in the Limited Partnership.  This argument fails because there is nothing special about this alleged injury.

[¶21]  A special injury occurs when the limited partner "suffered an injury that is special and distinct from not only any injury suffered by the entity but also any injury suffered by other" limited partners.  Daniel S. Kleinberger, *Direct Versus Derivative and the Law of Limited Liability Companies*, 58 Baylor L. Rev. 63, 93 (2006).  While Appellants highlight potential inequities in "practical terms," the Decedent's dealing with the Pueblo Property devalues the children's interest in the Limited Partnership by the same amount as Appellants', notwithstanding the fact that the Decedent's children may recoup the loss through the Decedent's estate.  Consequently, the Appellants do not allege a special injury that would entitle them to relief in the form of a direct action.[6]  *See Dowlin*, ¶ 6, 162 P.3d at 1204 (citation omitted).

### B.      Wyoming courts are without discretion to allow a direct action to remedy derivative injuries.

[¶22]  Appellants urge us to adopt a rule granting district courts discretion to allow plaintiffs to remedy derivative injuries through direct actions.  They suggest that the American Law Institute's Principles of Corporate Governance § 7.01(d) could guide such discretion.  Those principles allow derivative injuries to a closely held corporation to be remedied through a direct action so long as that action would not: "(i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons."[7]   ALI, Principles of Corporate Governance:

---

[6] Appellants also argue that the Decedent breached the duty of loyalty and care by not distributing the income allocated to the limited partners on their Schedule K-1 Forms.  More specifically, the complaint asserts partnership income was allocated "to the individual limited partners on K-1 tax forms," but that the "partners" did not receive the income reflected in the K-1 Forms.  While the failure to distribute limited partnership income to a single limited partner, or to a sub-group of limited partners, could give rise to a direct cause of action, the complaint does not allege any special injury nor do Appellants identify how the alleged breach is distinct from any breach suffered by all the limited partners.  Appellants also fail to articulate how a general partner not distributing income to limited partners equal to their K-1 allocations constitutes a breach of the duty of loyalty and care.

[7] The comments to the principles explain that the rules apply because under such circumstances "the concept of a corporate injury that is distinct from any injury to the shareholders approaches the fictional in the case of a firm with only a handful of shareholders."  ALI, Principles of Corporate Governance: Analysis and Recommendations § 7.01(d), cmt. e, Vol. 2 p. 20 (1994).

7

Analysis and Recommendations § 7.01(d), Vol. 2 p. 17 (1994). Although our precedent on direct versus derivative actions is limited, we have never strayed from the rule that derivative injuries must be remedied by derivative actions. *See, e.g.*, *Mantle*, ¶ 152, 437 P.3d at 806–07; *Sullivan*, ¶ 22, 412 P.3d at 312; *Wallop Canyon Ranch, LLC*, ¶ 31, 351 P.3d at 952. We see no reason to deviate from that rule here. Moreover, even if we adopted the § 7.01(d) principles or some similar rule, application of such principles would not save Appellants' direct cause of action. *See Arndt v. First Interstate Bank of Utah, N.A.*, 1999 UT 91, 991 P.2d 584 (Utah 1999).

[¶23] The Utah Supreme Court has applied the § 7.01(d) principles when the alleged injury was "much more direct than . . . a typical derivative claim." *See id.* ¶ 21, 991 P.2d at 588 (citing *Aurora Credit Servs., Inc. v. Liberty West Development, Inc.*, 970 P.2d 1273 (Utah 1998)) (other citations omitted). In *Arndt*, however, the Utah court held that the principles did not apply because the alleged injuries stemmed "from the claimants' non-particularized interests in their respective partnerships," which were uniformly affected by the general partner's fraudulent activity. *Id.* ¶ 22, 991 P.2d at 588. The uniform devaluation of the partners' non-particularized interest did not rise to the level of "much more direct than . . . a typical derivative claim," and the principles would not have saved plaintiffs' claims even if the principles applied. *See id.* ¶¶ 21–23, 991 P.2d at 588. Likewise, Appellants' claims stem from the devaluation of their non-particularized interest in the Limited Partnership. Their claims are more akin to a typical derivative claim and would not meet the § 7.01(d) criteria primarily because all interested persons (e.g. limited partners) are not plaintiffs entitled to recovery in this lawsuit—permitting a direct suit here could lead to a multiplicity of actions and inequitable distribution of any recovery. *See id.*; *see also El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1261 (Del. 2016) ("Any economic harm to [the limited partner] devolved upon him as an equity holder in the form of the proportionally reduced value of his units—a classically derivative injury.").

## C. The Appellants can satisfy the demand rule by pleading "demand futility."

[¶24] In their final argument, Appellants contend that they will be foreclosed from recovery if we require them to file a derivative action because they do not have a general partner on whom to make a demand and thus cannot satisfy the demand rule.[8] We can imagine no more fitting a scenario for "demand futility."

---

[8] From here, Appellants argue that a "limited partnership in dissolution should be treated as [a] general partnership." At oral argument, Appellants' counsel acknowledged that this did not occur by operation of law. They instead argued that a limited partnership that does not have a general partner should be treated like a general partnership because it "resembles the features of a general partnership"—i.e., the limited partners, like partners in a general partnership, may sue other limited and general partners in their individual capacities. We reject this argument because it would defeat the very purpose of limited partnerships: limited liability. *Compare* Wyo. Stat. Ann. § 17-14-403(a) (LexisNexis 2019) (noting that generally "a limited

[¶25]   Compliance with the demand rule is a statutory prerequisite to a derivative action. In Wyoming, limited partners can meet the demand rule if either: (1) "general partners with authority to do so have refused to bring the action" **or** (2) "an effort to cause those general partners to bring the action is not likely to succeed."   Wyo. Stat. Ann. § 17-14-1101 (LexisNexis 2019).   In other words, limited partners can meet the demand rule by making demand upon the general partner who has authority to bring an action, or by showing how demand is futile.  *See id.*   We have never addressed demand futility in the context of a limited partnership, nor have we addressed it in any helpful way in any other context (i.e., limited liability companies or corporations), but other courts have.

[¶26]   In the analogous corporate context, the United States Supreme Court has explained that "[t]he purpose of the demand requirement is to affor[d] the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right."  *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96, 111 S.Ct. 1711, 1716, 114 L.Ed.2d 152 (1991) (alteration in original) (internal quotation marks and citations omitted); *see also Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) ("[T]he entire question of demand futility is inextricably bound to issues of business judgment and the standards of that doctrine's applicability."), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).   "By permitting the shareholder to circumvent the board's business judgment on the desirability of corporate litigation, the 'futility' exception defines the circumstances in which the shareholder may exercise this particular incident of managerial authority."  *Kamen*, 500 U.S. at 102, 111 S.Ct. at 1719 (citation omitted).  A shareholder may exercise this authority when a court determines that "the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."  *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993); *see also In re EZCORP Inc.*, No. 9962-VCL, 2016 Del. Ch. LEXIS 14, at *108–09 (Del. Ch. 2016).  If the plaintiff satisfies this burden, then demand is futile.  *Rales*, 634 A.2d at 934.

[¶27] Appellants can satisfy the demand rule by pleading futility.   The Limited Partnership's Partnership Agreement states that "[t]he withdrawal of the General Partner shall dissolve the Partnership unless another General Partner exists and consents to carry on the business of the Partnership . . . [at] the time of the event of withdrawal."  The Decedent's death constituted an event of withdrawal and he was the only general partner. *See* Wyo. Stat. Ann. § 17-14-502 (LexisNexis 1997). Subsequent to the withdrawal of the sole general partner, the Partnership Agreement required the Limited Partnership to

---

partner is not liable for the obligations of a limited partnership unless he is also a general partner or, in addition to the exercise of his rights and powers as a limited partner, he participates in the control of the business."), *with* Wyo. Stat. Ann. § 17-21-306(a) (LexisNexis 2019) (noting that generally "all partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by law.").

dissolve, wind up, and then terminate.[9] After the Decedent's death, therefore, the Limited Partnership entered dissolution without a general partner—undoubtedly making Appellants' "effort to cause [the general partner] to bring the action" unlikely to succeed. Wyo. Stat. Ann. § 17-14-1101. Demand under these circumstances clearly would be futile. *See, e.g.*, *ESG Capital Partners II, LP v. Passport Special Opportunities Master Fund, LP* (*ESG Capital*), 2015 WL 9060982, at *16 (Del. Ch. 2015).

## *CONCLUSION*

[¶28] Appellants' complaint fails to state any facts entitling them to relief in a direct action because they seek relief for an injury to the Limited Partnership, not an injury individual to them. We decline to stray from the traditional requirement that a derivative injury be remedied through a derivative action. Finally, Appellants can satisfy the demand rule by pleading demand futility.

[¶29] We affirm.

---

[9] Appellants discuss at length the fate of a limited partnership that does not have a general partner and is in dissolution. Appellants argue that such an entity no longer meets the statutory definition of a "limited partnership" and that rigid adherence to a derivative action is no longer justified. We considered these arguments but found neither persuasive. A period of time exists between dissolution and termination in which, regardless the composition of limited and general partners, the Wyoming Uniform Partnership Act expressly permits either the remaining limited partners or the court to "wind up the limited partnership's affairs." *See* Wyo. Stat. Ann. § 17-14-903 (LexisNexis 2019). Adherence to the derivative action requirement is especially appropriate under the circumstances of this case where the proposed direct suit, if successful, would deprive at least six limited partners of recovery.