# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 85

*April Term, A.D. 2022*

**June 29, 2022**

BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING
STATE BAR,

Petitioner,

v.

GAY VANDERPOEL WOODHOUSE,
WSB #5-1580,

Respondent.

D-21-0005

## ORDER OF PUBLIC CENSURE

[¶1]     **This matter** came before the Court upon a Report and Recommendation for Public Censure, filed herein May 23, 2022, by the Board of Professional Responsibility for the Wyoming State Bar, pursuant to Rule 15 of the Wyoming Rules of Disciplinary Procedure. The Court, after a careful review of the Board of Professional Responsibility's Report and Recommendation and the file, finds that the Report and Recommendation should be approved, confirmed and adopted by the Court, and that Respondent Gay Vanderpoel Woodhouse should be publicly censured for her conduct.  It is, therefore,

[¶2]     **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for Public Censure, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶3]     **ADJUDGED AND ORDERED** that Gay Vanderpoel Woodhouse is hereby publicly censured for her conduct, which is described in the Report and Recommendation for Public Censure; and it is further

[¶4]    **ORDERED** that, pursuant to Rule 25 of the Wyoming Rules of Disciplinary Procedure, Ms. Woodhouse shall reimburse the Wyoming State Bar the amount of $50.00, representing some of the costs incurred in handling this matter, as well as pay the administrative fee of $750.00.  This Court finds that, given the circumstances, Ms. Woodhouse should not be liable for any other costs.  See Rule 25(e).  Ms. Woodhouse shall pay the total amount of $800.00 to the Wyoming State Bar on or before September 1, 2022. If Ms. Woodhouse fails to make payment in the time allotted, execution may issue on the award; and it is further

[¶5]    **ORDERED** that the Clerk of this Court shall docket this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, as a matter coming regularly before this Court as a public record; and it is further

[¶6]    **ORDERED** that, pursuant to Rule 9(b) of the Wyoming Rules of Disciplinary Procedure, this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶7]    **ORDERED** that the Clerk of this Court cause a copy of this Order of Public Censure to be served upon Respondent Gay Vanderpoel Woodhouse.

[¶8]    **DATED** this 29th day of June, 2022.

**BY THE COURT:**

/s/

**KATE M. FOX**
**Chief Justice**

IN THE SUPREME COURT
STATE OF WYOMING
FILED

MAY 23 2022

SHAWNA GOETZ, CLERK

by CHIEF DEPUTY

| | | |
|---|---|---|
| *In the matter of* | ) | |
| *GAY VANDERPOEL WOODHOUSE,* | ) | |
| *WSB 5-1580,* | ) | *WSB No. 2020-089* |
| | ) | |
| *Respondent.* | ) | |

## REPORT AND RECOMMENDATION FOR PUBLIC CENSURE

THIS MATTER came before a Hearing Panel of the Board of Professional Responsibility ("Panel") for hearing on April 18 and 19, 2022, for hearing pursuant to Rule15, W.R.Disc.P. Present at the hearing were Panel members Debra J. Wendtland (Chair), John A. Masterson and Janine Thompson. Mark W. Gifford, Bar Counsel, appeared on behalf of the Wyoming State Bar. Respondent Gay Vanderpoel Woodhouse appeared with her counsel, Stephen H. Kline. Numerous witnesses testified as summarized below. Bar Counsel's Exhibits BC-1 through BC-32 were received into evidence as were Respondent's Exhibits 2 through 6. The Hearing Panel having received testimony and reviewed the exhibits, having heard the arguments of counsel and being fully advised in the premises, finds, concludes and recommends as set forth below.

In submitting this report and recommendation, the Panel is mindful of this Court's holding in *Bd. of Pro. Responsibility v. Hinckley*, 2022 WY 18, ¶ 3, 503 P.3d 584, 593 (Wyo. 2022):

> "The purposes of the state bar disciplinary procedures are to maintain the integrity of the bar, to prevent the transgressions of an individual lawyer from bringing its image into disrepute and to protect the public and the administration of justice." *Bd. of Pro. Responsibility v. Richard*, 2014 WY 98, ¶ 51, 335 P.3d 1036, 1051 (Wyo. 2014) (citations and quotation marks omitted). *See also, ABA Standards for Imposing Lawyer Sanctions* § 1.1 (ABA Standards). In disciplinary proceedings, the responsibility of this Court is not to punish, but to inquire into and gauge a lawyer's continued fitness to practice law. This inquiry is conducted with a view to safeguarding the interests of the public, the courts, and the legal profession. *See* ABA Standards, Methodology ("The purpose of the disciplinary proceeding is not punitive but to inquire into the fitness of the lawyer to continue

in that capacity for the protection of the public, the courts, and the legal profession."); *State ex rel. Okla. Bar Ass'n v. Wintory*, 2015 OK 25, ¶ 15, 350 P.3d 131, 135 (Okla. 2015) ("The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely to properly discharge their professional duties to clients, the public, the legal system, and the legal profession.").

The Panel was impressed with the honesty and sincerity that was apparent in the testimony of all witnesses. The Panel did not have to resolve matters of witness credibility for purposes of its findings and recommendation set forth below.

### Findings of Fact and Conclusions of Law

1.     Gay Vanderpoel Woodhouse has been licensed to practice in Wyoming since 1978 and is engaged in the active practice of law in Cheyenne, Wyoming.  At all times relevant to this matter, she was an attorney with the firm of Woodhouse Roden Nethercott, LLC.

2.     The complaint against Ms. Woodhouse in the above-captioned matter was submitted in October 2020 by Ken and Erin Waszkiewicz of Cheyenne. At all times relevant to the complaint, Mr. and Ms. Waszkiewicz owned 100% of WyO Ninja, LLC ("WyO Ninja"), and 360 Degree Properties, LLC ("360 Degrees"). Cannon Meyer owned 100% of Ninja Playground, LLC ("Ninja Playground"). WyO Ninja and Ninja Playground both owned an equal-share (50%) interest in Ninja Playground Athletics, LLC ("Ninja Playground Athletics"). *See* Exhibit BC-1.

3.     All of the LLCs were formed in Wyoming. Prior to the formation of Ninja Playground Athletics, Ninja Playground operated a gym where people could train and work out based on the Ninja Warrior television show. In late 2019, 360 Degree Properties purchase an 8,000 square foot building located at 1505 Pioneer Avenue, which it then lease to Ninja Playground. This building housed the gym. The gym was then operated under Ninja Playground Athletics. *See* Exhibit BC-2.

2



Exhibit BC-1

4.     Ninja Playground Athletics began its operation in January 2020. The gym was forced to shut down in March of that year due to COVID-19. An ongoing business dispute between the partners of Ninja Playground Athletics became worse because the gym was shut down and Mr. Meyer brought people into the gym to work out when it was shut down.

5.     As a result, and in an attempt to bring an end to their disputes, Mr. and Ms. Waszkiewicz offered to purchase Ninja Playground's interest in Ninja Playground Athletics or have Ninja Playground purchase WyO Ninja's interest in Ninja Playground Athletics. Mr. Meyer (sole member of Ninja Playground) was unwilling or unable to do either.

6.     In April 2020, Mr. and Ms. Waszkiewicz retained Cheyenne attorney Ryan Wright to try and resolve the business dispute. Mr. Wright sent a request to mediate (pursuant to Ninja Playground Athletics' operating agreement, *see* Exhibit BC-2, p. 38 § 9.16.2) to Mr. Meyer. Exhibit BC-4. In response, Mr. Meyer hired Ms. Woodhouse, who then brought suit on behalf of Ninja Playground and Ninja Playground Athletics against WyO Ninja and 360 Degrees for access to the Ninja Playground Athletics facility, access to the books, records, and accounts of

3

Ninja Playground Athletics and the password(s) to the Ninja Playground Athletics' website and bank accounts. Mr. Meyer's Complaint further sought damages for tortious interference with the business. Exhibit BC-6.

Respondent's Violation of Rule 1.7

7.    W.R.Prof.Conduct 1.7 provides:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
 (1) the representation of one client will be directly adverse to another client; or
 (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
 (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
 (2) the representation is not prohibited by law;
 (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
 (4) each affected client gives informed consent, confirmed in a writing, signed by the client.

8.    Ms. Woodhouse admitted, under oath, that she undertook the representation of Ninja Playground and Ninja Playground Athletics without obtaining written, informed consent to represent Ninja Playground Athletics, and that she did so even though the Waszkiewicz' limited liability company (WyO Ninja) owned 50% of Ninja Playground Athletics. Further, Ms. Woodhouse admitted that the operating agreement for Ninja Playground Athletics LLC provided that each member is also a manager and that the members both held an equal interest in this LLC. By virtue of the fact that there were only two managers, decisions had to be unanimously agreed to before they could be taken. *See* Exhibit 6, p. 4 ¶ 20. By filing suit on behalf of Ninja Playground

4

Athletics and Ninja Playground, Ms. Woodhouse was in effect representing and suing her clients because WyO Ninja owned 50% of Ninja Playground Athletics. Despite citing to the language from the operating agreement in the complaint she filed, Ms. Woodhouse claimed in the complaint to represent Ninja Playground Athletics, based solely upon the unilateral act of Ninja Playground's decision to hire her to suing WyO Ninja. In violation of the operating agreement this was done without the informed consent of WyO Ninja.

9. On May 11, 2020, Mr. Wright sent a letter to Ms. Woodhouse informing her of her conflict of interest. Exhibit BC-9. On May 13, 2020, Ms. Woodhouse stated "I see no conflict of interest to my representation. The 'conflict' was entirely created by your clients [WyO Ninja and 360 Degrees]. They can end it and end my involvement in the case." Exhibit BC-10.

10. Unable to persuade Ms. Woodhouse to withdraw from the case due to her conflict of interest, on July 17, 2020, Mr. Wright filed a motion to disqualify Ms. Woodhouse and another lawyer in her firm because they refused to acknowledge there was a conflict of interest. Exhibit BC-17. According to Ms. Woodhouse's testimony before the panel, it was at this point that she knew she had a conflict. However, she filed a brief in opposition (*see* Exhibits BC-18, BC-19), and argued at the September 3, 2020 hearing on the motion that she had no conflict. On October 9, 2020, Judge Sharpe granted the motion to disqualify Ms. Woodhouse and her firm, ruling that there was a concurrent conflict of interest as defined by Rule 1.7, W.R.Prof.Cond. Exhibit BC-20. In finding that a concurrent conflict of interest existed, the court reasoned:

> Here, Plaintiffs' counsel's representation of Ninja Playground may be directly adverse to Ninja Playground Athletics. Ninja Playground is a 50% member-manager of Ninja Playground Athletics. The other 50% member-manager of Ninja Playground Athletics is WyO Ninja. Currently, WyO Ninja has asserted claims against Ninja Playground, including a claim of conversion. The issue of whether Ninja Playground converted property of Ninja Playground Athletics may create an adverse situation. Ninja Playground claims its interests are aligned with Ninja Playground Athletics by wanting to reopen the business as soon as practicable. In

5

contrast, WyO Ninja asserts its interests are aligned with Ninja Playground Athletics by wanting to comply with public health laws and not open without the ability to comply with the reopening requirements. These dual interests create a conflict of interest for Plaintiffs' counsel to represent a 50% member-manager and the LLC. In addition, there is a significant risk Plaintiffs' counsel's representation of Ninja Playground Athletics will be materially limited by counsel's responsibilities to Ninja Playground. The controversy in this case involves the member-managers of Ninja Playground Athletics asserting claims against each other. Further, WyO Ninja has refused to consent to Plaintiffs' counsel representing Ninja Playground Athletics, as required under the operating agreement [citation omitted]. For these reasons, the court finds a current conflict of interest exists between Ninja Playground and Ninja Playground Athletics.

*Id.*, pp. 8-9. Based upon the foregoing findings, the court granted Mr. Wright's motion to disqualify Ms. Woodhouse as counsel for the plaintiffs.

11.     Ms. Woodhouse concedes, and the Hearing Panel finds by clear and convincing evidence and the testimony of Ms. Woodhouse before the panel, that her representation of the plaintiffs in the underlying litigation violated Rule 1.7, W.R.Prof.Cond.

<u>Respondent's Violation of Rule 3.1(a)</u>

12.     Shortly after Judge Sharpe granted Mr. Wright's motion to disqualify Ms. Woodhouse as plaintiffs' counsel, Mr. Wright filed a Rule 12(b)(6) motion to dismiss for failure to bring a claim upon which relief may be granted. Exhibit BC-26. In the motion, Mr. Wright argued that the lawsuit was in essence a derivative action for which the plaintiffs had failed to follow the requirements of W.R.C.P. Rule 23.1 and W.S. § 17-16-741 applicable to such actions.

13.     The deficiency of Ms. Woodhouse's apparent attempt to paint the claim she asserted on behalf of Ninja Playground Athletics as a derivative action was pointed out earlier by Mr. Wright in his briefing on the motion to disqualify plaintiffs' counsel. *See* Exhibit BC-19 pp. 4-7 ¶¶ 13-22; *cf.* Exhibit BC-18 pp. 7 ¶ 22.

14.     In granting the defendants' motion to dismiss, Judge Sharpe reasoned:

6

Here, Plaintiffs filed the *Complaint* asking the court to find Defendants breached the operating agreement for Ninja Playground Athletics, improperly locked Plaintiffs out of the gym facility, and deprived Plaintiffs of the quiet enjoyment and use of the gym facility. [Citation omitted.] These allegations are harms to Ninja Playground Athletics, not Ninja Playground, individually. This finding is evidenced by Plaintiffs' prayer for relief which asks the court to provide Plaintiffs access to the gym facility, award damages for interfering with Plaintiffs' use of the gym, and order WyO Ninja to provide Plaintiffs with the passwords for Ninja Playground Athletics' website and bank account. [Citation omitted.] Ninja Playground does not plead "an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by" Ninja Playground Athletics. WYO. STAT. ANN. § 17-21-901(b). Thus, after reviewing the *Complaint*, the court finds Ninja Playground does not plead a direct cause of action against Defendants. Rather, it appears Plaintiffs assert claims on behalf of Ninja Playground Athletics without following the procedures for bringing a derivative action. *See, e.g., Sullivan*, 2018 WY 19, ¶¶ 22-23, 412 P.3d at 312 (explaining the difference between a direct and derivative action); *Fritchel*, 2019 WY 117, ¶¶ 12-15, 452 P.3d at 604-05 (discussing the distinction between direct and derivative actions).

In Wyoming, "[a] member maintaining a direct action . . . shall plead and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company." WYO. STAT. ANN. § 17-21-901(b). As the Wyoming Supreme Court has warned: "The distinction between a derivative action and a direct action is important because 'a plaintiff who mischaracterizes a derivate cause of action as direct [risks] dismissal of the claim' for failure to comply with derivative suit procedural requirements." *Mantle*, 2019 WY 29, ¶ 154, 437 P.3d at 807 (alteration in original) (citation omitted). Because Plaintiffs' alleged injury is derivative in nature and Plaintiffs did not bring a derivative claim, the court finds the *Complaint* should be dismissed. *See Fritchel*, 2019 117, ¶ 22, 452 P.3d at 606 ("Although our precedent in direct versus derivative actions is limited, we have never strayed from the rule that derivative injuries must be remedied by derivative actions."); *see also Mantle*, 2019 WY 29, ¶ 154, 437 P.3d at 807. [footnote omitted.]

*See* Exhibit BC-29 pp 7-8.

15.     During the hearing, Ms. Woodhouse conceded, and the Panel finds, that there was no basis in the law for the claim she asserted as a direct action on behalf of Ninja Playground Athletics against WyO Ninja. Thus, Ms. Woodhouse violated Rule 3.1(a), W.R.Prof.Conduct, which provides in relevant part, "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivo-

lous, which includes a good faith argument for an extension, modification or reversal of existing law." The Panel rejects the contention of Bar Counsel that Ms. Woodhouse also violated Rule 3.1(b), which provides, "The signature of an attorney constitutes a certificate by him that he has read the pleading, motion, or other court document; that to the best of his knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Mr. Wright conceded at the hearing that Ninja Playground LLC potentially had a direct action against WyoNinja LLC.

## Dismissal of Bar Counsel's Contention that Respondent Violated Rule 8.4(d)

16. In the formal charge, Bar Counsel contended that Ms. Woodhouse also violated Rule 8.4(d), W.R.Prof.Conduct. That rule provides, "It is professional misconduct for a lawyer to *** engage in conduct prejudicial to the administration of justice."

17. In *Bd. of Pro. Responsibility v. Hinckley*, 2022 WY 18, ¶¶ 71-72, 503 P.3d 584, 611-612 (Wyo. 2022), the Court held:

> Although we have addressed violations of Rule 8.4(d) in prior cases, we have never precisely defined what type of conduct violates the rule. Our cases demonstrate Rule 8.4(d) does not prohibit an attorney from making a mistake, or even from committing malpractice. It focuses on conduct which interferes with the legal process. *See, e.g., Bd. of Pro. Responsibility v. Fulton*, 2006 WY 51, 133 P.3d 514, 518 (Wyo. 2006) (the attorney violated Rule 8.4(d) "by counseling [the clients] regarding how to unlawfully avoid tax consequences of interest earned from the settlement monies"); *Bd. of Pro. Responsibility v. Barnes*, 2013 WY 5, 297 P.3d 77, 78-79 (Wyo. 2013) (attorney was disbarred after falsifying documents he presented to the county treasurer in violation of several rules of professional conduct, including Rule 8.4(d)); *Bd. of Pro. Responsibility v. Davidson*, 2009 WY 48, ¶¶ 5, 19, 205 P.3d 1008, 1010, 1016 (Wyo. 2009) (attorney violated Rule 8.4(d) by falsely alleging in a motion for reassignment of the trial judge that the judge had engaged in an improper *ex parte* communication with opposing counsel and was "rumored" to afford favoritism to members of opposing counsel's firm).

In light of this precedent, we adopt a test from the D.C. Court of Appeals for determining whether an attorney's conduct violates Rule 8.4(d). *In re Owusu,* 886 A.2d 536 (D.C. 2005). Under that test, the disciplinary authority must present clear and convincing evidence: "(1) that the attorney acted improperly in that he either [took] improper action or fail[ed] to take action when ... he or she should [have] act[ed]; (2) that the conduct involved bear[s] directly upon the judicial process (*i.e.,* the administration of justice) with respect to an identifiable case or tribunal; and (3) that the conduct taint[ed] the judicial process in more than a *de minimis* way, meaning that it at least potentially impact[ed] upon the process to a serious and adverse degree." *Id.* at 541 (citations and quotation marks omitted). *See also, Att'y Grievance Comm'n v. Moawad,* 475 Md. 424, 257 A.3d 611, 644 (2021) ("An attorney violates [Rule 8.4(d)] when his or her conduct impacts negatively the public's perception or efficacy of the courts or legal profession.") (citation and quotation marks omitted).

18. Applying the *Owusu* three-factor test to the evidence and sworn testimony of Ms. Woodhouse before the Panel, the Panel finds clear and convincing evidence that Ms. Woodhouse admits that she acted improperly in that she either took improper action or failed to take action when she should have in filing a claim in which she had a conflict of interest and which in part lacked a legal basis. Thus, the first prong of the *Owusu* test has been satisfied.

19. The Panel also finds clear and convincing evidence that Ms. Woodhouse's conduct bore directly on the administration of justice in an identifiable case, i.e., the lawsuit before Judge Sharpe. Further, the Panel finds that Ms. Woodhouse admitted the same in her testimony before the Panel. Thus, the second prong of the *Owusu* test has been satisfied.

20. However, the Panel does not find clear and convincing evidence that Ms. Woodhouse's conduct tainted the judicial process in more than a *de minimis* way, the third prong of the *Owusu* test. Accordingly, the charge that Ms. Woodhouse violated Rule 8.4(d) is dismissed.

## The Appropriate Sanction for Respondent's Misconduct

21. Rule 15(b)(3)(D), Wyo.R.Disc.Proc., provides, "In imposing a sanction after a finding of misconduct by the respondent, the BPR shall consider the following factors, as enumerated in the ABA Standards for Imposing Lawyer Sanctions:

9

(i) Whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession;

(ii) Whether the lawyer acted intentionally, knowingly, or negligently;

(iii)The actual or potential injury caused by the lawyer's misconduct; and

(iv)The existence of any aggravating or mitigating factors

21. The American Bar Association's "Standards for Imposing Lawyer Discipline" (hereafter referred to as the "ABA Standards") state, "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession."

22. ABA Standard 3.0 lists the factors to be considered in imposing a sanction after a finding of lawyer misconduct and mirrors the language of Rule 15(b)(3)(D), Wyo.R.Disc.Proc.:

(a) the duty violated;

(b) the lawyer's mental state;

(c) the potential or actual injury caused by the lawyer's misconduct; and

(d) the existence of aggravating or mitigating factors.

### The Duty Violated

23. Ms. Woodhouse's violation of Rules 1.7(a) (conflict of interest) implicates ABA Standard 4.3, "Failure to Avoid Conflicts of Interest," which provides:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving conflicts of interest:

4.31 Disbarment is generally appropriate when a lawyer, without the informed consent of client(s):

10

(a) engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to the client; or

(b) simultaneously represents clients that the lawyer knows have adverse interests with intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client; or

(c) represents a client in a matter substantially related to a matter in which the interests of a present or former client are materially adverse, and knowingly uses information relating to the representation of a client with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client.

4.32 Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.

4.33 Reprimand [i.e., "public censure" under Rule 9(a)(3), W.R.Disc.P.] is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client.

4.34 Admonition [i.e., "private reprimand" under Rule 9(a)(4), W.R.Disc.P.] is generally appropriate when a lawyer engages in an isolated instance of negligence in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes little or no actual or potential injury to a client.

24. Applying ABA Standard 4.3 to the evidence and testimony presented at the hearing, the Panel finds that the presumptive sanction for Ms. Woodhouse's violation of Rule 1.7 is a public censure. The Panel finds that Ms. Woodhouse was negligent in determining whether the representation of Ninja Playground and Ninja Playground Athletics in a claim against WyO Ninja was a conflict of interest. Further the Panel finds that Ms. Woodhouse's negligent actions caused injury to a party in the form of increased legal costs and increased legal proceedings.

25. Ms. Woodhouse's violation of Rule 3.1(a) (meritorious claims and contentions) falls under ABA Standard 6.2:

11

6.2    *Abuse of the Legal Process*

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving failure to expedite litigation or bring a meritorious claim, or failure to obey any obligation under the rules of the tribunal except for an open refusal based on an assertion that no valid obligation exists:

6.21    Disbarment is generally appropriate when a lawyer knowingly violates a court order or a rule with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.

6.22    Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.

6.23    Reprimand [i.e., "public censure" under Rule 9(a)(3), W.R.Disc.P.] is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.

6.24    Admonition [i.e., "private reprimand" under Rule 9(a)(4), W.R.Disc.P.] is generally appropriate when a lawyer engages in an isolated instance of negligence in complying with a court order or rule, and causes little or no actual or potential injury to a party, or causes little or no actual or potential interference with a legal proceeding.

26.    Applying ABA Standard 6.2 to the evidence and testimony presented at the hearing, the Panel finds that the presumptive sanction for Ms. Woodhouse's violation of Rule 3.1(a) is a public censure. The Panel finds that Ms. Woodhouse negligently failed to comply with Rule 23.1, W.R.Civ.P., in attempting to bring a derivative action as a direct action. Further the Panel finds that Ms. Woodhouse's negligent actions caused injury to a party in the form of increased legal costs and increased legal proceedings.

### The Lawyer's Mental State

27.    The preamble to the ABA Standards for Imposing Lawyer Sanctions (the "ABA Standards") includes the following discussion regarding mental state:

12

The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.

28. The Panel finds that Ms. Woodhouse acted negligently in failing to comply with Rules 1.7 and 3.1(a).

### The Potential or Actual Injury Caused by the Lawyer's Misconduct

29. Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

30. The Panel finds, and Ms. Woodhouse herself testified that, her conduct caused actual injury to Mr. and Mrs. Waszkiewicz in the form of substantial and significant increased legal costs and increased legal proceedings. (*GW testimony: admit substantial amount of money in legal fees and substantial amount of the Court's time. She also admits costs were significant. P. 17/lines 6-19)

### Aggravating and Mitigating Factors

31. ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:

9.1 *Generally*

13

After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.

9.2    *Aggravation*

9.21    *Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

9.22    *Factors which may be considered in aggravation.* Aggravating factors include:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of the victim;
(i) substantial experience in the practice of law;
(j) indifference in making restitution; and
(k) illegal conduct, including that involving the use of controlled substances.

9.3    *Mitigation*

9.31    *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

9.32    *Factors which may be considered in mitigation.* Mitigating factors include:
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
(i) mental disability or chemical dependency including alcoholism or drug abuse when:
　(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
　(2) the chemical dependency or mental disability caused the misconduct;
　(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
　(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.
(j) delay in disciplinary proceedings;
(k) imposition of other penalties or sanctions;
(l) remorse; and

14

(m) remoteness of prior offenses

9.4    *Factors Which Are Neither Aggravating nor Mitigating*

The following factors should not be considered as either aggravating nor mitigating:

(a) forced or compelled restitution;

(b) agreeing to the client's demand for certain improper behavior or result;

(c) withdrawal of complaint against the lawyer;

(d) resignation prior to completion of disciplinary proceedings;

(e) complainant's recommendation as to sanction; and

(f) failure of injured client to complain.

32.    The Panel notes that Ms. Woodhouse reimbursed Mr. and Ms. Waszkiewicz for legal fees incurred in the underlying litigation in the amount of $31,784.17.

33.    The Panel finds aggravating factors are multiple offenses and substantial experience in the practice law. The Panel further finds there are significant mitigating factors including (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) timely good faith effort to make restitution in the form of a substantial reimbursement of Complainants' attorney's fees incurred in defending the underlying lawsuit; (4) full and free disclosure to Bar Counsel; (5) remorse and (6) Respondent's good character and reputation.

34.    In consideration of the evidence presented, the testimony given and the admissions of Ms. Woodhouse there is clear and convincing evidence of misconduct in the violation of Rule 1.7. Additionally, the Panel notes the presence of significant mitigating factors present in the case. Together, the evidence, testimony and mitigating factors support the Panel finding that a public censure is the appropriate sanction in this case for the violation of Rule 1.7.

35.    Likewise, in consideration of the evidence presented, the testimony given and the admissions of Ms. Woodhouse there is clear and convincing evidence of misconduct in the violation of Rule 3.1(a). Additionally, the Panel notes the presence of significant mitigating factors present in the case. Together, the evidence, testimony and mitigating factors support the Panel finding that a public censure is the appropriate sanction for the violation of Rule 3.1(a).

15

## Recommendation

In consideration of the foregoing findings of fact and conclusions of law, the Panel recommends as follows:

1. That Ms. Woodhouse receive a public censure for violations of Rule 1.7 and a public censure for the violation of 3.1(a), W.R.Prof.Cond.

2. That Ms. Woodhouse be required to pay an administrative fee of $750.00 and be required to reimburse the Wyoming State Bar for certified costs of this proceeding as provided in Rule 25(e), W.R.Disc.P.

Dated this _16_ day of May, 2022.

Debra J. Wendtland, Chair
Hearing Panel of the Board of Professional
Responsibility
Wyoming State Bar

16